In the matter of proceedings by the St. Paul & Northern Pacific Railway Company to acquire for its use a certain railroad crossing.

### June 28, 1887

**Eminent Domain—Railway Crossing—Public Interests.**—Under Gen. St. 1878, *c.* 34, § 47, (as amended by Laws 1879, *c.* 35, § 3,) a railway company has no absolute right, at its own mere election, to a crossing over the railroad of another company. The court to whom the application for the appointment of commissioners is made, is first to determine whether the crossing sought is necessary and required by public interests.

**Same.**—The provisions of section 17, in that regard, are applicable to proceedings under section 47.

The St. Paul & Northern Pacific Railway Company presented its petition to the district court for Ramsey county, alleging that it is a corporation invested with power to construct a railroad from Brainerd to Mankato by way of Minneapolis and St. Paul; that it has constructed its railroad from Brainerd to a point in the city of St. Paul about 200 feet southerly of Seventh street and immediately adjacent to the westerly side of the right of way of the St. Paul, Minneapolis & Manitoba Railway Company; that under the provisions of Sp.

Laws 1879, c. 318, petitioner has the right, and desires, to use the road, tracks and depot of the St. Paul Union Depot Company; that, by reason of numerous switch tracks of the St. Paul, Minneapolis & Manitoba Railway Company into the yards of the said company and other railroad companies, it is impracticable for petitioner to locate its railroad or to reach the tracks or grounds of the Union Depot Company on the said westerly side of the said right of way; that the petitioner in the location of its railroad from said point near Seventh street to the grounds and tracks of the Union Depot Company, elects to cross the railroad of the St. Paul, Minneapolis & Manitoba Railway Company, at a point specified, (a map of the proposed crossing being attached to the petition;) and that the petitioner and the St. Paul, Minneapolis & Manitoba Railway Company cannot agree upon the amount of compensation to be made for the crossing. The petition thereupon prays for the appointment of commissioners to ascertain and determine such compensation.

The St. Paul, Minneapolis & Manitoba Railway Company interposed an answer to this petition, alleging, among other matters, that the public interests do not require the proposed crossing, that the same would be highly injurious to the interests of the public and of no substantial advantage to the petitioner, and that the crossing would make it impracticable to use the tracks proposed to be crossed, upon which the respondent and three other railroad companies transact a vast amount of business. Upon the issues made by this answer and the reply, evidence was taken before a referee, and the matter was fully argued before *Wilkin*, *Brill*, and *Simons*, JJ., who made an order denying the application of the petitioner. From this order the petitioner appeals.

*D. A. Secombe*, for appellant, cited *Weir* v. *St. Paul, S. & T. F. R. Co.*, 18 Minn. 139, (155;) *St. Paul, M. & M. Ry. Co.* v. *City of Minneapolis*, 35 Minn. 141, (27 N. W. Rep. 500;) *Matter of Cent. R. Co. of Long Island*, 1 N. Y. S. C. 419; *Matter of Buffalo & Lockport Ry. Co.*, 15 Hun, 365; s. c. 77 N. Y. 557; *Rens. & Sar. R. Co.* v. *Davis*, 43 N. Y. 137; *Matter of N. Y. C. R. Co.*, 66 N. Y. 407; *Thompson* v. *Bickford*, 19 Minn. 1, (17, 27;) *Goodall* v. *Tuttle*, 3 Bissell, 219; N. Y. Laws, 1850, c. 140, § 28.

*R. B. Galusha, Chas. E. Flandrau,* and *Geo. B. Young,* for respondent.

MITCHELL, J.[1]  This appeal was taken from an order denying an application of the St. Paul & Northern Pacific Railway Company, pursuant to Gen. St. 1878, c. 34, § 47, as amended by Laws 1879, c. 35, § 3, for the appointment of commissioners to assess and determine the amount of compensation to be made to the St. Paul, Minneapolis & Manitoba Railway Company for a crossing of the railway tracks of the latter company by the railroad of the petitioner, at a point in the city of St. Paul about 200 feet southerly of Seventh street.

The only point raised or urged by appellant is that, under the statute cited, it had an absolute right to make the crossing, conditional only upon payment of compensation; that the fact that it elected to make the crossing was conclusive evidence of its necessity; and that the court had no power to consider whether public interest required it, and no discretion except to prescribe the location and manner of making the crossing in case the two companies could not agree.

This is a bold claim of absolute power, to which the petitioner, in order to maintain its contention, must show no doubtful right.  The power of eminent domain may doubtless be delegated to corporations, to be exercised in such manner and under such restrictions as the legislature may determine; yet it is a prerogative of sovereignty, and its exercise by corporations is a special privilege against common right.  Therefore any corporation claiming to exercise it *suo arbitrio,* exempt from any judicial determination as to the necessity or propriety of such exercise, must show a clear and unambiguous grant from the legislature of the right claimed.  The foundation idea upon which the right of eminent domain rests is *public necessity;* and, while the legislature is the absolute judge of the existence of such necessity, yet the delegation of the power to any corporation to decide for itself when this necessity exists is so dangerous, and so in conflict with all the previous policy of the state, that it would require very clear language to justify a court in holding that the legislature in-

---

[1] Berry, J., owing to illness, was absent, and took no part in the decision of this case.

tended to give one railroad the absolute right, at its mere election, to cross another railroad, although such crossing might not only serve no useful purpose, but also destroy the public usefulness of the road crossed, by jeopardizing the lives of travellers and operatives. Even where special charters make railway companies the judges, in their own cases, as to what property is necessary to be taken for the purposes of their roads, courts of equity have often interfered, at the suit of private persons, to restrain the corporations from an abuse of their power.

In this state, in the case of railway companies organized under special charters which gave them very extensive powers to take private property, and which contained no provision for any determination by the court, in the condemnation proceedings, of the question of the necessity of the taking, this court has very clearly intimated that, if they attempted to abuse their powers, the companies would be subject to the control of the courts. *Wilkin* v. *First Division, etc., R. Co.,* 16 Minn. 244, (271;) *Weir* v. *St. Paul, S. & T. F. R. Co.,* 18 Minn. 135, (155.)

In 1872, and again in 1879, Gen. St. *c.* 34, § 17, was so amended as to make the questions whether the public interests required the railroad to be built at all, and whether the lands proposed to be taken were required and necessary, judicial ones to be determined by the court.

In view of these considerations, we repeat that it would require unequivocal language to satisfy us that there had been so complete a relaxation of this policy as to leave the matter of making a railway crossing to the uncontrolled will of the corporation desiring to make it. But a consideration of the language of the entire section (47) as amended, and a comparison of it with other legislation *in pari materia,* leads us to the conclusion that no such absolute right is given, but that in proceedings under this section the court has the same powers as in any other case of the proposed exercise of the right of eminent domain under chapter 34, and, as was suggested in *State* v. *District Court,* 35 Minn. 461, (29 N. W. Rep. 60,) is first to determine whether the crossing sought is necessary and required by public interest.

The section amended (47) gives to a railroad company power to

appropriate so much of any street as may be necessary for the purposes of its road. Gen. St. 1866, c. 34, in which this section is found, contained no express provisions for any determination by the court as to the necessity of the appropriation in any case. And, as the route of the road is left to the company, the same interpretation on which appellant insists would give any railroad company the absolute right to lay its line on any street in any city without control by the court as to its propriety or necessity. Section 47 does not in terms provide how the right granted shall be exercised, except that, if the companies cannot agree upon the compensation, the same shall be ascertained and determined by commissioners to be appointed by the court *as herein provided for the appropriation of the property of individuals.* The sections referred to are 13 to 17 of chapter 34; the latter section being amended by section 1 of the same chapter, (35,) Laws 1879, on which appellant founds its claim. Under these sections the court is only authorized to appoint commissioners when (1) a petition has been presented in conformity with section 14; (2) notice has been given as required by section 15; (3) a hearing has been had at which all persons interested may show cause, etc.; (4) the court has been satisfied that the public interest requires the prosecution of the enterprise, and that the property sought to be taken is required and necessary to such enterprise, as provided in section 17. And by section 13 the power of condemnation, and the procedure in the exercise of it, are expressly limited to *necessary* lands. In making the provisions of these sections applicable to proceedings for a crossing, we think the legislature intended to include the whole of them, including that requiring the court first to be satisfied that the public interests require the prosecution of the enterprise, and that the lands proposed to be taken are required and necessary for that purpose; in other words, that the authority to appoint commissioners in an application for a crossing under section 47 is only found in section 17, and is coupled with all the conditions precedent to its exercise prescribed by the latter section.

As was suggested in *State* v. *District Court, supra,* the provisions of Laws 1879, c. 80, give much force to this view. This act was passed only four days before the act (chapter 35) now under consideration.

Both relate to the same general subject-matter,—railway crossings. Chapter 35 provides for crossings by railroads organized under Gen. St. *c.* 34; chapter 80, for crossings by any and all railroads. The latter act puts the right to such a crossing on the same footing as the right to take any other property, and hence requires the court to be satisfied that the crossing is necessary, and is required by public interests. It would certainly be remarkable that the legislative policy in regard to the right to acquire these crossings should have undergone so radical a change in so short a space of time. Neither can any good reason be assigned why an absolute right should be given to companies organized under the general law, and only a qualified right given to those organized under special charters. As suggested by respondent, if any distinction was to be made, it would seem more natural that it would be in favor of companies organized under special charters, whose lines the legislature itself had declared to be required by public interests, rather than in favor of those companies whose enterprises are determined by themselves alone.

An argument made by the petitioner in favor of its construction is that this section is copied from the general railroad law of New York, (Laws 1850, *c.* 140, § 28,) and that, before it was adopted here, it had been construed in New York in accordance with petitioner's claim. (*Matter of Buffalo & Lockport Ry. Co.*, 15 Hun, 365, and 77 N. Y. 557.) It will be observed, however, (1) that while section 3 of chapter 35 is based on section 28 of the New York statute, it so far differs from it as to show that our legislature did not intend to adopt the latter section bodily; and (2) that the law had not received any authoritative construction by the court of appeals in New York until after the enactment of section 3 in this state. It will also be observed that our legislature did not adopt the entire statute of New York, but merely took a part of a single section out of the general railroad law of that state, and incorporated it, with certain modifications, into the body of our general railroad law, which is a materially different system. Now, it is a familiar rule of statutory construction that, in construing any part of a law, the whole must be considered. The different parts reflect light on each other. Hence although, when an entire statute is adopted, the settled construction of it by the highest

court of the state may be presumed to be also adopted, this presumption does not necessarily obtain where but a single section is taken from the body of a system of laws on a certain subject, and inserted into another and essentially different system of laws on the same general subject, for the manifest reason that in the latter connection its meaning may be so far modified or limited by other portions of the statute as to be very different from what it bore in the law from which it was borrowed.

This is well illustrated in the present case. The general railroad law of New York gave no such absolute right to a crossing as is here claimed by the petitioner. By section 22 of that law, before building into any county, the company must file a map and profile of its intended route, and give notice to all occupants of land over which the proposed route passes. Any party feeling aggrieved by the proposed location may apply to a supreme court justice, setting forth his objections, who, after hearing the parties, may affirm or alter the same, as may be "consistent with the rights of all parties and the public." Hence petitioner's claim of an absolute right to cross the line of another road at its own mere election, regardless of public interests, and independently of the control of the courts, receives no aid from the statutes of New York. Section 22 of the statute of that state gives the courts a control over the route of a railway analogous, in the main, to that given to them by section 17 of our statute; and we think that in borrowing the substance of section 28 of that statute, and inserting it in section 47 of ours, the legislature intended that the right of a railway company to a crossing should be subject to the control and discretion vested in the courts by section 17.

Order affirmed.

An application for a reargument of this case was denied on October 11, 1887.