## CROSSING OF A STEAM RAILROAD BY AN INTERURBAN LINE.

[Common Pleas Court of Darke County.]

THE DAYTON & UNION RAILROAD COMPANY v. THE DAYTON & MUNCIE TRACTION COMPANY.

Decided, October 2, 1903.

*Railway Crossings—Injunction Sought by a Steam against an Interurban Road—Dangerous Character of Crossing—Interference with Franchise of Existing Road—Rights of Interurban after Appropriation Proceedings—Jurisdiction—In Law and in Equity.*

After condemnation proceedings in the probate court, instituted by an interurban street railway company to appropriate a crossing of the right of way and tracks of a steam railroad, are terminated in favor of the appropriation and the condemnation money and costs have been paid into court, such railroad company can not maintain an injunction against the construction of the crossing by such interurban company on the ground of the alleged dangerous character of the crossing, or of interference with the franchise of the plaintiff company.

ALLREAD, J.

This action is submitted upon a demurrer to the first defense of the amended answer.

The petition bases the right to an injunction upon the alleged dangerous character of the contemplated crossing, and also upon the alleged interference with the existing franchise of the plaintiff company.

An amendment to the petition adds the additional claim that the defendant company seeks to take possession and construct the crossing without having the right to do so by condemnation proceedings. A supplemental petition was also filed which need not be considered here.

---

*Note.*—This decision and the decision by Judge Allread on another branch of the same case, reported in 1 Nisi Prius—New Series, page 218, were both affirmed by the Circuit Court, November 25, 1903.

The first defense in the amended answer and to which the demurrer is directed sets out proceedings in the probate court begun on July 13th—two days after the filing of the petition in this case—for the condemnation of the contemplated crossing; that all the claims here made as to the dangerous and burdensome character of this crossing were passed upon as a preliminary question in the probate court, and were by that court decided adversely to the plaintiff, and such court proceeded to assess the damages, which, with costs, have been paid into that court by the appropriating company. It is claimed that the proceedings and judgment of the probate court in the condemnation case referred to is a complete bar to this action.

I have carefully examined the questions presented in the argument and in the briefs, which are full and exhaustive upon the questions raised.

It is claimed and argued that the jurisdiction of this court is superior to that of the probate court because the action for injunction was first commenced. But it will be observed that the action in the probate court was for a wholly different purpose and to obtain a wholly different relief. The familiar rule as to courts of concurrent jurisdiction of a subject matter, that the one first acquiring jurisdiction obtains precedence over the other, does not therefore apply. Each court is entitled to assert its own appropriate jurisdiction. This court had and still has full jurisdiction to restrain any contemplated infraction of a right between the parties concerned for which no adequate remedy at law exists; and the probate court has full jurisdiction as a purely legal forum to consummate the appropriation and incidentally to decide all proper questions relating thereto and within the scope of its jurisdiction.

Careful reflection convinces me that while these two jurisdictions approach each other very nearly, they do not conflict; equity yielding wherever the legal remedy is adequate. When this action was brought the plaintiff had a clear right to an injunction against the defendant company making the appropriation, for the reason that the plaintiff company had a right under the Constitution to have the damages fixed by condemnation proceedings (*Schaff* v. *Railroad Co.*, 66 O. S., 215).

Whenever the condemnation is complete and compensation paid or tendered, equity yields its jurisdiction on that point, and the

injunction should be discontinued unless it is supported upon other grounds.

It would appear that the question is not so much what the probate court actually tried as what it had jurisdiction to try in the appropriation proceedings. For whatever the condemnation court could hear and determine and grant appropriate relief upon will not be reheard here. Multiplicity of suits is as much abhorred in equity as at law, and the jurisdiction in equity in this case yields whenever full relief is obtainable at law, whether its jurisdiction was first invoked or not.

There are authorities presented to the court supporting the jurisdiction of a court of equity to enjoin a contemplated crossing independent of the appropriation or condemnation proceedings (Elliott on Railroads, Section 1125, and authorities there cited.)

But most of the cases cited as supporting the text of that authority base the jurisdiction upon a statute specially regulating crossings or upon the ground that the condemnation statute was deficient as to this subject. Indeed the text itself limits this right of injunction to cases where the complainant does not have an adequate remedy at law.

It therefore appears that the whole question hangs upon the scope of the preliminary hearing in the condemnation case as to the "necessity of the appropriation." If the court of condemnation can under the head of "necessity of the appropriation" inquire into and determine as to the place and manner of crossing as affecting the rights of the existing company, and grant adequate relief, the jurisdiction of this court would cease with the action of the probate court.

There does not appear to be any statute regulating the right of a traction company to cross a railroad, and the only authority therefor is found in the condemnation statutes.

The question therefore recurs: What does the condemnation court investigate and adjudicate when it determines as to the "necessity of the appropriation"?

Some light may be thrown on this question by consideration of the power of eminent domain as it exists in a public corporation. Formerly a corporation having the right of eminent domain had the discretionary power to select the land to be appropriated, and in the absence of abuse, such discretion would not be reviewed by the courts. But under our statutes, the court, as a preliminary

question, determines affirmatively the necessity of the appropriation. Suppose a railway company seeks to appropriate an unnecessary amount of real estate; may not the court find and determine that such amount of real estate is unnecessary? Suppose the defendant company here had sought to cross the plaintiff's road at numerous places by loops; may not the condemnation court hold many of these crossings unnecessary?

Williams, C. J., in the case of *Railroad Co.* v. *Village of Belle Center*, 48 O. S., 294, says:

"It may be true that a railroad corporation is in the first instance the exclusive judge of what lands are necessary for its purposes, and of the quantity of land so needed, and that it may acquire the same by condemnation; but the rightful exercise of its power of eminent domain is limited to the appropriation of such lands as are reasonably necessary for its legitimate uses."

In the case of *Giesy* v. *Railway Company*, 4 O. S., 308, in the syllabus it is said:

"It (power of eminent domain) may be exercised directly or indirectly by the General Assembly without the intervention of the judiciary except for determining the amount of compensation. But the courts possess full power to determine its proper limits and to prevent abuse in its exercise. The power rests upon the public necessity and can only be exercised where such necessity exists. But this necessity relates rather to the nature of the property and the uses to which it is applied than to the exigencies of the particular case, and it is no objection to the exercise of the power that lands equally feasible could be obtained by purchase."

The term necessity, therefore, is not confined entirely to the exigencies of the corporation seeking the appropriation, but is applied to the nature of the appropriation sought, as related as well to the public necessity.

The case of *Railway Company* v. *Haney*, 178 Ill., 477, contains an interesting discussion as to the scope of the word "necessity" as used in the condemnation statutes. See also the following cases: *Seattle & Montana R. R. Co.* v. *The State*, 22 L. R. A., 214; *Matters of St. Paul & Northern Pacific Ry. Co.*, 37 Minn., 164-7; *Matters of Minneapolis & St. Croix Ry.*, 39 Minn., 162; *Lake Shore & M. S. Ry. Co.* v. *Cincinnati, W. & M. Ry.*, 116 Ind., 578.

In the first instance, the appropriating company determines the place and manner of the crossing. It is required to make an effort to agree with the existing company, and upon a failure to agree application is made for condemnation of the particular crossing

selected by the appropriating company. The existing railway company is made a party and has a right to be heard as to the necessity of the appropriation, and if there is no necessity, the appropriation fails. The failure of the appropriation is as full relief as could be granted by injunction. The necessity of the appropriation includes a consideration of said necessity as to place and manner of the crossing. It is not merely the physical necessity of the appropriating company nor its exigency in the extension of its line between termini and along its located line, but necessary in the light of the power granted of eminent domain; a power exercised as well in the public interests as to promote the particular interests of the company seeking the appropriation.

The following cases relate to the crossing of the yards and tracks of a railway company by a public highway and in principle, at least, apply here: *The Cleveland Terminal & Valley Railroad* v. *Akron,* 1 Circuit Court—New Series, 174; *The T. & O. C. Railway Company* v. *Fostoria,* 7 C. C., 293; *The P., C., C. & St. L. Railway Company* v. *Greenville* (unreported; Sullivan, J.).

It would therefore follow that the question of the dangerous character of the crossing and of the interference with the plaintiff's franchise was directly involved in determining the "necessity of the appropriation," and in the forum of the condemnation court and not here the railroad company was required to defend its rights.

A question is made in argument as to the right of proceedings in error to the determination of the probate court upon preliminary questions. Without venturing an opinion here as to the scope of jurisdiction of a court of error, I am inclined to the view that it would not affect the question under consideration here. A court of equity would hardly interfere where a legal remedy exists simply because no provision, or at least, no adequate provision, is made for the proceedings in error to review the sufficiency of the determination of a legal tribunal. Error proceedings are not usually granted as a matter of right, but of favor, and it will therefore be time enough to determine as to the scope of the error proceedings when the question necessarily arises.

It therefore follows that the demurrer to the first defense in the amended answer should be overruled. No reply being offered, the restraining order is dissolved and the petition dismissed.

*Nevin & Nevin, John C. Clark* and *C. B. Heiseman,* for plaintiff.
*Anderson & Bowman,* for defendant.