IN RE EASTERN WISCONSIN RAILWAY AND LIGHT COMPANY.

*March 1—March 20, 1906.*

*Eminent domain: Railroads: Crossing of other railroads: Necessity:*
*Manner of crossing: Appeal: Questions reviewed.*

1. Under subd. 6, sec. 1828, Stats. 1898 (conferring in express terms upon any railroad corporation the power to cross, intersect, join, and unite its railroad with any railroad theretofore or thereafter constructed, and providing that every corporation

whose railroad is or shall be thereafter intersected by any new railroad shall unite with the owners of such new railroad, and if the two corporations cannot agree upon the amount of compensation and points of crossing, the same shall be ascertained by commissioners), no specific act is enjoined upon the company seeking to cross, and hence the lapse of over one month after a written proposition by petitioner offering to make due and just compensation, and a request for uniting in forming an intersection crossing, justify a finding that the parties were unable to agree.

2. The proceeding under subd. 6, sec. 1828, Stats. 1898, is not a proceeding for the condemnation of land for the construction of a railroad, but a proceeding to effect a crossing or intersection, and the question of necessity in such proceeding has already been determined by the legislature, and is not one for determination by the court on the application for appointment of commissioners.

3. Under subd. 6, sec. 1828, Stats. 1898, the petitioner is entitled to the appointment of commissioners to determine the question of a crossing on the route proposed, and whether some other crossing, track, or means had been offered to the petitioner, whether available or not, is immaterial.

4. In such case, under ch. 497, Laws of 1905, the manner in which grade or other crossings are to be made is to be determined by the commissioners when appointed, with right to appeal to the circuit court from their award; and hence, on an appeal from an order appointing the commissioners, the question of the kind of crossing is not before the court.

APPEAL from an order of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The appellant is an electric railway company operating a street railway from a point near Electric Park in the town of Black Wolf, Winnebago county, Wisconsin, about one and one-half miles south of the city limits of the city of Oshkosh, thence northerly to the city of Oshkosh, through said city and Winnebago county to the city of Neenah. Respondent is a railroad corporation, and as such is operating an electric interurban railway between the cities of Fond du Lac and Oshkosh. Prior to September 30, 1903, the Fond du Lac & Oshkosh Electric Railway Company was duly organized, and

owned and operated an interurban electric road from Fond du Lac to a point between 1,200 and 1,300 feet westerly from the south terminus of appellant's line near Electric Park, and on February 17, 1902, entered into a contract with the appellant to connect with its road and run over its tracks into the city of Oshkosh, which tracks of appellant from Electric Park are along the easterly side of the public highway known as the Lake Shore road in the towns of Black Wolf and Algoma, which highway crosses the track of the Chicago & Northwestern Railway in the town of Algoma at what is known as the Doty-street crossing, thence continuing northward to the city of Oshkosh on Doty street as far as Eighteenth, on Eighteenth westerly to Oregon, on Oregon northerly to Ninth, on Ninth easterly to South Main. Under said contract the appellant agreed that it would carry the cars of the Fond du Lac & Oshkosh Electric Railway Company upon its tracks over the streets above mentioned, and the contract provided that the appellant should not, during the term of the contract, furnish power or trackage over its tracks to any other party or parties operating, or desiring to operate, a railroad into the city of Oshkosh from the south covering certain territory, without first obtaining the written consent of the Fond du Lac & Oshkosh Electric Railway Company, and that it would not, either itself or by its agents, operate or build a railroad south of the then terminus of its tracks without the consent of the said Fond du Lac & Oshkosh Electric Railway Company, and that said Fond du Lac & Oshkosh Electric Railway Company should not, during the term of the contract, build any track into the city of Oshkosh without obtaining the consent of the appellant; and further provided that the Fond du Lac & Oshkosh Electric Railway Company should not carry local passengers from any point on the tracks of the appellant to other points on said tracks, and that it was the intention of the contract that the Fond du Lac & Oshkosh Electric Railway Company should not interfere with the es-

tablished business of the appellant upon the tracks of its own system. The contract further provided that it should be in full force and effect during the term of the franchises of the appellant. A supplemental agreement was afterwards made between said companies on February 24, 1903, containing the following provisions:

"First. The party of the first part shall permit second party to carry local passengers from points on its tracks, named in said contract of February 17, 1902, south of said crossing, and deliver them at any point between said crossing, and High street in said city of Oshkosh, named in said contract of February 17, 1902, and to carry local passengers from points on its tracks in the city of Oshkosh, named in said contract of February 17, 1902, and deliver them at any point south of the said crossing on said track of first party during such times only as first party shall not furnish service south of said crossing.

"Second. The second party shall pay to first party two and one-half cents for each and every passenger carried under the terms of this agreement and ten per cent. of the gross receipts for any service other than the carrying of passengers.

"Third. It is mutually agreed and understood that second party is not to carry passengers between the points herein named when first party is furnishing service between said points.

"Fourth. This agreement may be canceled at any time by either party upon giving the other party ten days' notice of its cancellation."

Afterwards the petitioner was duly incorporated and succeeded to all the rights and privileges of said Fond du Lac & Oshkosh Electric Railway Company, and thereafter continued to run its cars over the tracks of the appellant into the city of Oshkosh. In 1905 the board of directors of the petitioner, by resolution duly passed, located the route of its road over a more direct route from the point 1,200 or 1,300 feet westerly from appellant's line near Electric Park, thence northerly to a point of crossing with the tracks of the appellant in section 36, town of Algoma, thence across the tracks of said

appellant and the Chicago & Northwestern Railway so as to connect with its own track then laid in South Main street in the city of Oshkosh. The appellant having failed to unite with the petitioner in an agreement to form intersections and grant facilities for crossing, the petitioner filed its petition for the appointment of commissioners to ascertain the points and manner of crossing, connections, and the amount of compensation to be made therefor by petitioner to appellant. The petition contained the usual allegations in such cases, and the court gave notice of hearing, whereupon the appellant appeared and answered denying the petitioner's right to the appointment of commissioners. The case was heard upon the petition and answer, and the court found that no sufficient cause was shown against the granting of the prayer of the petition, and that it satisfactorily appeared that the parties could not agree as to the points and manner of crossing and connections and the place at and manner in which such crossing should be made, and the amount of compensation to be made therefor by petitioner to the appellant, and ordered and determined that for the purpose of constructing, completing, and operating its road it was necessary for petitioner to form an intersection and crossing with the road of the appellant, where the route of the petitioner's road, as laid out and surveyed, crossed the road of the appellant, and that the points and manner of such crossing, the place at and manner in which the crossing should be made, and the compensation to be made therefor be determined by commissioners; and further ordered that petitioner was entitled to the appointment of commissioners, as by statute in such case made and provided, to ascertain the points, manner of crossing, connections, place at and manner in which such crossing should be made, and the amount of compensation to be made therefor by petitioner to appellant, and appointed three commissioners accordingly. Exceptions were duly made to this order, and an appeal taken therefrom to this court.

For the appellant there were briefs by *Weed & Hollister,* attorneys, and *Charles Barber,* of counsel, and oral argument by *Mr. H. I. Weed* and *Mr. Barber.*

For the respondent there was a brief by *Bouck & Hilton,* attorneys, and a separate brief signed also by *Thompson, Thompson & Pinkerton,* and oral argument by *John F. Kluwin* and *Charles Quarles.*

KERWIN, J.   It is undisputed that at the time of the commencement of this proceeding the petitioner was a railroad duly incorporated according to law, and authorized to carry freight and passengers over its road between the cities of Fond du Lac and Oshkosh, and was duly authorized to construct, operate, and maintain an electric interurban railroad between said cities, and avail itself of all the rights and privileges conferred by subd. 6, sec. 1828, Stats. 1898, and ch. 497, Laws of 1905.   But it is strenuously maintained on the part of the appellant that the petitioner was not entitled to the appointment of commissioners in the instant proceeding, for the reasons: (1) That it had not shown a failure to agree with the appellant as to amount of compensation to be made or the points and manner of crossing; and (2) that no necessity had been shown for the crossing in question.

1. Subd. 6, sec. 1828, Stats. 1898, respecting railroad crossings, provides that a railroad corporation shall have power "to cross, intersect, join and unite its railroad with any railroad heretofore or hereafter constructed, at any point on its route and upon the grounds of such railroad corporation. . . . And every corporation whose railroad is or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor or the points and manner of such crossings and connections the same shall be ascertained by

commissioners to be appointed by the court, as is provided in this chapter in respect to acquiring title to real estate." And ch. 497, Laws of 1905, makes all the provisions of the above subdivision apply to street and electric railways, and provides in effect that the commissioners shall have power to determine the place at and manner in which grade or other crossings shall be made, and, on an appeal from the determination and award to the circuit court, such court shall have power to review, revise, modify, or affirm such award both as to the amount of compensation and the manner of making such crossing, and may make such reasonable provisions as it shall deem necessary for public safety.

It will be seen from the foregoing that no specific act is enjoined by the terms of the statute upon the company seeking to cross. It in express terms confers the power to cross, intersect, join, etc., and provides that "every corporation whose railroad is or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad, . . . and if the two corporations cannot agree upon the amount of compensation" and points of crossing, the same shall be ascertained by commissioners. Clearly, from the express language of the statute, no specific duty is imposed upon the company seeking the crossing respecting an effort to agree other than is imposed upon the old company. No act is required to be done and no positive duty in that regard enjoined. The duty imposed must rest alike upon both parties. This is clear from the provisions of the statute. It seems to be conceded by petitioner's counsel that the statute contemplates that the two companies should make an effort to agree. The failure to agree is all that is necessary to allege in the petition. This fact was alleged and found by the court. Assuming the statute contemplates that both companies shall make an effort to agree we think it has been clearly shown that petitioner did all it was required to do. Negotiations were in progress between the representatives of the companies

respecting the matter from September until December, and a written notice served by petitioner about a month before the filing of the petition offering to make due and just compensation, and demanding that the appellant unite with the petitioner in forming an intersection and crossing, specifying the kind, place, and manner of the crossing desired, and before this notice was served several unsuccessful attempts had been made to agree. No claim is made by the appellant that the two companies could or did ever agree. The main controversy in the court below was that there was no necessity for the crossing. It is contended by counsel for appellant that no offer of any amount was ever made as compensation; but clearly this was unnecessary, under the statute, upon any theory. When the demand was made to agree and pay just compensation, it was the duty of the appellant to meet the petitioner upon its proposition and endeavor in good faith to agree. The written proposition of petitioner, and the lapse of nearly a month without any response from appellant, was sufficient to justify the finding that the parties were unable to agree. 2 Lewis, Em. Dom. § 302. Without pursuing the subject further, we are satisfied that there was a *bona fide* attempt on the part of the petitioner to agree, and that the finding of the court below on that question is fully supported by the evidence.

2. The necessity for the crossing was determined by the legislature. It was neither delegated to the court nor to the commissioners. The statute above referred to expressly empowers the new road to cross the tracks of the old, but leaves to the commissioners in the first instance the right to determine the points and manner of crossings and connections and the compensation to be made. As we understand counsel's argument, they contend that the necessity for the crossing is to be determined by the court, and rely upon cases decided under the condemnation statutes, where the power to deter-

mine the necessity is delegated by the legislature to the court. But it is very clear that these statutes contemplate two classes of cases, and the decisions bear out that construction; one where the power to take is expressly given, and the other where the necessity to take is left for the determination of the court. In the former the court has nothing to do with determining the necessity; that is done by the legislature. *Wis. C. R. Co. v. Cornell University,* 52 Wis. 537, 8 N. W. 491; *Wis. C. Co. v. Kneale,* 79 Wis. 89, 48 N. W. 248; *In re Lockport & B. R. Co.* 77 N. Y. 557. The Wisconsin cases above cited do not construe the particular statute in question here, but make clear the distinction between cases where the determination of the necessity is delegated to the courts and cases where it is determined by the legislature. Moreover, the proceeding under subd. 6, sec. 1828, Stats. 1898, above cited, is not a proceeding for the condemnation of land for the construction of a railroad, but is simply a proceeding to effect a crossing or intersection, and the question of necessity in such proceeding is not one for determination by the court on the application for appointment of commissioners. *In re Lockport & B. R. Co., supra.* A careful examination of the two cases mainly relied upon by counsel for appellant (*In re St. Paul & N. P. R. Co.* 37 Minn. 164, 33 N. W. 701, and *Seattle & M. R. Co. v. State,* 7 Wash. 150, 34 Pac. 551) and the statutes of these states upon the subject convinces us that they are not controlling here. The Minnesota supreme court, in *State ex rel. St. Paul, M. & M. R. Co. v. District Court,* 35 Minn. 461, 29 N. W. 60, construed the statute as follows:

"The district court is called upon to do three things: (1) Determine the necessity of the crossing; (2) prescribe where and how it shall be made; and (3) appoint commissioners."

Clearly this is not the construction which our crossing statute should receive. The authority to cross is plainly dele-

gated to the railroad by the legislature, hence the determination of the necessity is not for the court on special proceeding for the appointment of commissioners. The Washington statute is essentially different from ours, as will be seen from the following quotation therefrom:

"And if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in the manner provided by law for the taking of lands and other property which shall be necessary for the construction of its road."

While, from the view we take of the case, it was wholly unnecessary for the lower court to determine the necessity to make the crossing, it did so determine, and its finding upon this point is fully supported by the evidence. The record shows that the petitioner could not enter the city of Oshkosh over its proposed route without crossing the tracks of the appellant. The offer to permit the petitioner to use certain portions of its track in entering the city, or the alleged contract relations, need not be considered, since they are no defense to this proceeding. The petitioner was entitled to the appointment of commissioners to determine the question of a crossing on the route proposed, under the provisions of the statute, and whether some other crossing, track, or means of entrance were offered by the appellant, whether available or not, was wholly immaterial. The petitioner had the right to construct and operate its road under its franchises in the manner provided by law over the route selected by its board of directors, and it owed a duty to the public to do so, which it could not abandon at pleasure.

The parties having failed to agree, and the petitioner being entitled as matter of right under the statute to the appointment of commissioners, the other questions discussed by counsel become immaterial and unnecessary to consider on this appeal. Whether petitioner was entitled to a grade crossing is

not before us.   Ch. 497, Laws of 1905, hereinbefore referred to, provides:

"The commissioners therein named shall have power to determine the place at and manner in which grade or other crossings shall be made, and on an appeal from the determination and award of such commissioners to the circuit court as provided by this chapter, in condemnation proceedings, such court shall have power to review, revise, modify, or affirm such award, both as to the amount of compensation therein provided, and as to the manner of making such crossing, and may make such reasonable provisions as it shall deem necessary for public safety."

It will be seen that on appeal from the determination and award to the circuit court a review may be had.   It follows that the order below should be affirmed.

*By the Court.*—The order appealed from is affirmed.