STATE, BY HARRY H. PETERSON, ATTORNEY GENERAL, v.
HERMAN G. WERDER AND OTHERS.[1]

June 4, 1937.

Nos. 31,025, 31,026.

[1]Reported in 273 N. W. 714.

*Harry H. Peterson,* Attorney General, *Ordner T. Bundlie,* Assistant Attorney General, and *John E. Katzmarek,* Special Assistant Attorney General, for appellant Harry H. Peterson, Attorney General.

*Murphy, Johanson & Winter,* for appellant Elsie M. Appleton.

*A. C. Dolliff* and *A. R. English,* for intervening taxpayers-respondents.

STONE, JUSTICE.

This highway condemnation proceeding comes up on appeals by the attorney general and an interested property owner from a judgment enjoining the expenditure of state money and for some incidental relief.

The case has to do with trunk highway No. 19, formerly constitutional trunk highway No. 14, where it enters the city of Redwood Falls from the west and just after it crosses the Redwood River. The crossing is at the point where the river on its northerly course is dammed to make Lake Redwood. The highway crosses Minnesota street, running north and south, just east of Redwood Lake and the highway bridge over the river. The residence property, at the southwest corner of that intersection, in area 115 by 70 feet, is owned by appellant Elsie Appleton.

The proceeding was commenced to condemn land of other owners. The Appleton lot was not then included, but later Mrs. Appleton intervened, claiming that it would be permanently damaged by the highway, and had her damages fixed by commissioners at $3,000. From that award the attorney general appealed.

January 11, 1936, there was filed a stipulation bearing date of October 15, 1935, executed by the attorney general and the attorney for Mrs. Appleton. It recited the award and went on to state that the whole matter of the appeal and the award was "adjusted, compromised and settled in the sum of $8,000," to be paid to the said Elsie Appleton and her attorney. Mrs. Appleton was bound to convey her property to the state free of encumbrances but with the right reserved to her to "remove all buildings, structures and appurtenances * * * except foundation from said premises on or

before June 1, 1936." Subsequently, on or about January 17, 1936, Herman G. Werder, who had already appeared in the proceeding with A. J. White and S. B. Duea, who had not otherwise appeared therein, filed a petition for an order to show cause against the commissioner of highways, the attorney general, and Mrs. Appleton, why the stipulation and the deed of the Appleton premises (by that time the property had been conveyed to the state) should not be annulled and why the commissioner and the state auditor should not be enjoined from paying to Mrs. Appleton "any sum in payment of the damages claimed to have been sustained by her in excess of the amount awarded by such commissioners * * * together with legal interest." An order to show cause was issued accordingly, the moving taxpayers appearing in support of the petition, and the attorney general in opposition, both for himself and the commissioner of highways. The state auditor and state treasurer also appeared, not as active litigants, but, in substance, asking the decree of the court as to their duty in the premises in respect to the payment of the $8,000 promised Mrs. Appleton by her stipulation with the attorney general and highway department.

The decision below was for the so-called intervening taxpayers and against the attorney general and commissioner of highways. The commissioner, auditor, and treasurer were restrained from paying Mrs. Appleton any money whatsoever pursuant to the stipulation or otherwise. The stipulation of settlement was ordered vacated and the Appleton deed annulled. From the resulting judgment these appeals are taken.

■ The first question is one of procedure. The three taxpayers, upon whose petition the order to show cause issued, are not interveners in the technical sense. They did not apply for leave to intervene under 2 Mason Minn. St. 1927, § 9263, permitting intervention by "any person having such an interest in the matter in litigation between others that he may either gain or lose by the direct legal effect of the judgment therein." Much difficulty might have been avoided if the plainly blazed and long-traveled statutory trail had been followed. But the resulting question raises a difficulty apparent rather than real.

As to the physical subject matter, jurisdiction *in rem* is not questioned. The court automatically got jurisdiction, regardless of the identity or number of the individuals who appeared personally, for the purpose of orders or judgments binding *in personam* any or all who did so appear.

There can be no question that the three taxpayers could have sought injunctional relief in an appropriate separate action. This proceeding being *in rem,* the judgment entered not beyond the power of the court, and the only question being as to those who might ask for it, we perceive no reason why taxpayers should not be permitted to appear, in any proper manner, to invoke judicial action. Generally, "it is not absolutely essential that a person shall be a party to an action in order that he may be allowed to make a motion therein." 19 R. C. L. p. 673. That rule was applied in Haley v. Eureka County Bank, 21 Nev. 127, 26 P. 64, 12 L. R. A. 815, so as to permit an attorney to move for the dismissal of an action on the ground of collusion, although he did not represent any party to the case.

The attorney general's denial of jurisdiction cannot be sustained because the court, having jurisdiction of the subject matter, *in rem,* acquired jurisdiction *in personam* over all the parties as they entered their personal appearances. We do not forget that the attorney general by a special appearance has preserved his right to question jurisdiction. It was of no avail for reasons already noted. Once a highway condemnation proceeding is started, neither the state nor the commissioner of highways, who institutes the action on behalf of the state through the attorney general, can claim to be, *in personam,* beyond the court's reach as to any order or judgment within the ambit of the proceedings. Equally plain it is that any other litigant appearing *in personam,* as did the state auditor and state treasurer in this case, is before the court in similar fashion. The court has power to make, *in personam,* as against all parties before it, any order or to enter any judgment which is appropriate to the case and within the field of judicial inquiry thereby presented. In sum, this preliminary question is not one of jurisdiction. Rather

and only, it was one of procedure. In consequence, the irregularity, if any, falls far short of presenting any cause for reversal.

■ The center line of the relocated highway was first fixed by formal order of the highway commissioner. Later came another, fixing the width north of the Appleton property at 100 feet, 50 feet on each side of the center line. That line, as fixed by the first order, remains unchanged. It is parallel to and more than 50 feet north of the north boundary of the Appleton property, all of which is outside the right of way.

We cannot allow the argument that because, after the orders locating and fixing the width of the highway, the commissioner purchased the Appleton property, it automatically became a part of the right of way. Action by the commissioner of highways in locating a highway and fixing boundaries for the right of way must be taken conformably to the statute, 1 Mason Minn. St. 1927, § 2554(4), by formal written order. In this case the only orders of the commissioner exclude the Appleton lot from the right of way.

It certainly was not the intention of the statute, and would thwart the expressed will of the lawmakers, to hold that after a right of way has been designated, and without more, the commissioner may buy as much additional land adjoining the highway as he thinks necessary and thereby make it part of the right of way. To follow such a course, or to allow it to be followed, would by so much transgress the plain mandate of § 2554, subd. 1 of which limits the acquisition of land to "necessary right of way," and subd. 4 of which requires designation of "the final and definite location of any trunk highway" by formal, written order. Subd. 9 of the same section contemplates that all such orders shall become and remain of public record in the office of the commissioner. They are of such importance and dignity that certified copies are made "evidence in any court in this state with the same force and effect as the originals."

It is argued that in locating a new, or widening or relocating an old, right of way, he may first acquire the ground "necessary," and consequently "needed" (1 Mason Minn. St. 1927, § 2554), by purchase, and then make his definitive order.

That course may often be permissible and even wise in the mechanics of administration. But it is difficult to see how it can be known what additional land is necessary and needed until tentatively, at least, its amount and boundaries are determined. In some cases the commissioner may be able to save the state money by buying all, instead of condemning a portion, of a tract. In such a case the incidental result that the state may be left with a fragment not included in the highway should ordinarily be immaterial and indeed may reflect credit on the commissioner. But the statute still demands that such determination be made, finally and definitely, by formal order. Section 2554, subd. 4(a). If acquisition precedes order, the latter must at least be made before a court can decide what is within and what is without the right of way. Judicial decision cannot be based on the mere testimonial prediction of some representative of the commissioner. In this case his decision, or order, excludes the Appleton lot from the highway.

If a proposed acquisition of right of way is to be by condemnation, there is obvious necessity for the definitive order of location in advance of the proceeding. If the additional land is to be acquired by purchase and there is no limit whatever upon the power to purchase without the definitive order of location, there is no limit in fact to the commissioner's power to acquire, for, in that case, he could buy a large property and later include and use only an insignificant part of it in the right of way. Nothing of that kind was intended by the statute.

All that is said in State, by Hilton, v. Voll, 155 Minn. 72, 73, 192 N. W. 188, 189, when properly applied to its subject matter, confirms rather than impairs our present conclusion. That was a condemnation proceeding wherein it was claimed by the owners that some of the lands which had been formerly "designated" by the commissioner "were not required and the taking thereof would not serve a public use." We held that the designation by the commissioner was final. Here there has been no such designation, only an attempted purchase. It was there held [155 Minn. 74] that "the legislature intended to give him [the commissioner] the same authority to designate the land to be taken under the right of

eminent domain as to purchase or accept by gift lands for right of way." Again [155 Minn. 75], "we think the action of the commissioner of highways in selecting land for the right of way for a trunk highway is of the same finality as that of the voters of a school district selecting a school site." That was because he was "the agency" established by the legislature to select the particular property needed for this public use. Finally, this significant language was used [155 Minn. 76]: "The taking by the commissioner of a right of way under said c. 323 is specifically prescribed and very simple, it is by making an order covering the land selected for the trunk highway involved."

Here we repeat, at the risk of being tiresome, that the commissioner has not yet, in the manner required of him by statute for the exercise of his duty in the premises, "designated" or "selected" the Appleton lot as a part of the highway or an appurtenance thereto. Notwithstanding that, we are asked, in order to reverse the judgment, to make such designation or selection for him. That surely would be unwarranted intrusion upon the legislative and executive domain of the commissioner, and, by so much, "judicial usurpation."

What we have said as to the power of the commissioner (which nothing in this decision should be construed as limiting when exercised within the limits of the grant of it) applies to the suggestion, and it is nothing more, that it was desirable in the interest of the safety of traffic to utilize the northeast corner of the Appleton property as a "sight corner." Ordinarily, the acquisition of an easement would answer that purpose. But whether the sight corner be acquired through an easement or the fee, it must be appurtenant to or part of the right of way. Hence, again under the statute, the possessor of the power, the commissioner, must exercise it in the manner indicated by statute, that is, by definitive formal order which must "designate" the limits of the highway.

In the testimony there is suggestion that the Appleton property was needed for drainage purposes. We find no evidence that any drain had ever been surveyed, or otherwise laid out, as an appurtenance of the highway, across the lot or any part of it. (See

§ 2600.) Here again there is absence of effective, definitive action by the highway commissioner of the kind demanded by statute. The matter of drainage may be litigated upon the trial of the appeal, if there ever is a trial, from the award of damages to Mrs. Appleton. So far no reason appears why her home as it stands cannot be well protected from highway flowage without any drain upon or over any part of the property. Not for us is the issue as to how much or what portion of the property is necessary to be taken or subjected to an easement for drainage purposes. Decision of that question is for the commissioner himself.

There is testimony suggesting an additional reason for taking over the Appleton lot. It was thus stated by Mr. S. Rex Green, engineer and purchasing agent of lands for the highway department:

"This happens to be a project on which there is being expended money for artistic development, and the federal government has required the state to spend not less than one per cent of the funds given it by the government to pay for houses and property for that purpose, and it is necessary to buy sufficient right of way so that artistic development may actually be completed."

As to all that, it is again enough that we cannot base decision upon the mere testimony of a subordinate of the highway commissioner. The highway "purposes" for which he may acquire lands by condemnation or purchase are enumerated by statute. Thereby he is required to take definitive action, at least as to locating the highway and fixing its boundaries, by formal written order. There is no such order which authorizes or justifies, or attempts to authorize or justify, the acquisition by condemnation or purchase for any purpose of the Appleton property. Also, what "the federal government has required" cannot alter the state law which controls. Anyway, we have nothing but the quoted item of testimony to show what that supposed requirement is.

Trunk highways are not, cannot be, established or their boundaries fixed, neither can they be judicially confirmed, on the mere testimony of anyone. All that must be done, under plain law, by the formal order of the commissioner. There is no such order, we repeat, including the Appleton property or any part of it.

The argument has indicated, without presenting for decision, another question. On behalf of the highway commissioner it has been suggested that he may acquire, within what limits has not been stated, additional ground, as in this case, for purposes of "beautification." It must be remembered that as matter of constitutional law, under the so-called Babcock amendment, Minn. Const. art. 16, § 1, the system to be established thereunder was to consist of highways and nothing else. Art. 16, § 2, is at some pains to say that the trunk highway fund thereby contemplated shall be devoted solely to the highway purposes specified in § 1. Those objectives did not include any system of parks or beautification, independently of a highway, in either an urban or rural community.

To illustrate, under modern conditions of traffic, there could be, we assume, no reasonable argument that it is not a legitimate highway purpose so to widen a right of way at a scenic or other proper point as to enable tourists to pause and park their cars thereon in positions of safety. On the other hand, there would be serious question, not merely of statutory, but also of constitutional, law if independently of a way of travel there was an attempt to spend from the highway fund for purposes of local "artistic development" such as the establishment and maintenance of a mere park. That issue, not now considered or decided, so looms close in the background of this case that it would seem to us a breach of public duty were we, by silence, to simulate indifference to, or ignorance of, either its near presence or its importance.

No one denies that the legislature may vest in, and has granted to, the commissioner of highways a vast power. When he acts within the limits and in the manner prescribed by law, no court may properly interfere. But not to be forgotten is the inescapable fact that art. 16 of the state constitution is a part of the law circumscribing both his powers and the execution thereof. Were we to hold that, out of the constitutional highway fund, wholly exacted from motorists, the commissioner may purchase land, anywhere and to any extent, for some purpose which officially and formally he does not disclose, and which is not otherwise shown to be for any highway use, we would be opening wide a conduit for an un-

constitutional diversion of public monies constitutionally dedicated to a special purpose. The point has been argued at the bar and much considered. But there has been presented no reason or authority with persuasiveness adequate to justify our embarkation on a course so fraught with danger to constitutional limitations.

Judgment affirmed.

GALLAGER, CHIEF JUSTICE (dissenting).

I am unable to agree with the views expressed in the majority opinion in this case. The case presents only two questions: (1) Did the interveners as taxpayers have the right to question the action of the highway commissioner in purchasing the property involved herein; and (2) if so, was the court justified in holding void the contract for the purchase of said property and in enjoining the state treasurer and state auditor from paying for same?

1. While the right of the intervening taxpayers to become parties to this proceeding in the manner they have seems irregular to me, I am nevertheless willing, for the purpose of reaching the real question involved, to assume that said taxpayers or at least one of them had such right.

2. I am not willing, however, to agree with the views expressed in the majority opinion that the mere ministerial act of the highway commissioner of designating by order the final and definite location of the trunk highway in question in accordance with the provisions of 1 Mason Minn. St. 1927, § 2554, subd. 4(a), has any connection with his power to acquire land either by purchase or condemnation in accordance with the provisions of § 2554, subd. 1, nor is it a limitation thereon. Neither do I believe that the failure of the commissioner to include the particular tract involved in this litigation in the order of designation constituted the real ground upon which this proceeding was instituted, tried, or determined.

An examination of the petition upon which the order to show cause was issued, of the statements of counsel and of the court during the course of the trial, and of the decision of the trial court and the memorandum attached thereto, clearly indicates to me that the real issue in the case had to do with the right of the court to

"clip the wings" of the highway commissioner. Perhaps the powers of the commissioner should be curbed. I am not passing upon that question, but if they should I feel that the operation should be performed by legislative action rather than by judicial mutilation. As bearing upon that question, I quote (a) from the allegations found in the interveners' petition setting forth the grounds upon which the order to show cause was asked; (b) from the statements of counsel and the court made at the trial; and (c) from the findings of fact and memorandum of the trial court.

Paragraph 11 of the petition upon which the order to show cause was issued reads as follows:

"That although the value of said premises, including all structures and improvements thereon, has not at any time mentioned herein been worth in excess of Four Thousand Dollars ($4,000.00), it was provided in and by such stipulation that said petitioner should pay to the said Elsie M. Appleton the sum of Eight Thousand Dollars ($8,000.00) in cash, and that in addition thereto said Elsie M. Appleton was to remain the owner of all buildings and structures on said premises and to remove such buildings and structures on said premises on or before June 1, 1936. *That the tract of land hereinbefore described is not needed by the State of Minnesota in connection with the establishment and relocation of said highway, but that as a matter of fact the establishment and relocation thereof has been completed, and that there can be no public need or necessity that would justify the purchase of such tract of land by petitioner."* (Italics supplied.)

Prior to the commencement of the trial there was considerable discussion between counsel for the respective parties and the court as to the issues to be tried. As bearing upon his understanding of these issues, Mr. English, counsel for the intervening taxpayers, said:

"What is right of way? It is land needed for actual highway purposes, land which is necessary to constitute a part of the highway when the right of way is established. If they had the right to purchase the Appleton property at any price, regardless of the

amount, then they had the right to purchase the whole block if they saw fit, even though no part of that block was necessary for highway purposes." (Record, pp. 49-50.)

"We claim that the price agreed to be paid is absolutely exorbitant, nor did the Commissioner have the right to buy the property at all." (Record, p. 51.)

"If that was true at the time the appeal was taken, if they never acquired any part of the Appleton premises, then I say that the Court can properly find that they had no right to enter into this stipulation at all. And now we simply ask that the Court receive the evidence either now or when convenient and that the Court then decide whether the Commissioner of Highways is 'monarch of all he surveys.'" (Record, p. 53.)

"It is our idea, if the Court please, answering Mr. Murphy's question, that there are two issues involved here: *First, as to whether the commissioner had any right at all to purchase this property under Section 2554 of Mason's Statutes, Laws of 1927; and, secondly, we feel that the question of the value of this property is quite important. And we think both issues should be considered here, for this reason.* \* \* \* *But when the evidence of value is before the Court that this property was not in fact needed for highway right of way purposes, then the Court might find that there was fraud in the purchase of the property, and on that phase the question of value may be very important.* And we expect to offer considerable testimony as to the value of the property both before and after the purchase of the property." (Record, pp. 58-59.) (Italics supplied.)

I also quote from statements made by the court during the progress of the trial:

The Court: "I am denying your motion made on the special appearance. I can only say that if the Highway Department had the right to acquire this property in this manner, it seems to me that it is the duty of our state officials or somebody to protect the taxpayers. You may be right on the law, but it is for the Supreme Court to say that, as far as I am concerned. So we will go ahead on the merits of the case. The motions or demurrers are overruled,

and the matter will be taken up on its merits on February 17, 1936, at ten o'clock in the forenoon, and the temporary restraining order stands until that time." (Record, p. 54.)

The Court: "It is a little peculiar that where appraisers have done their work as they did in this case and where appeal was taken by the State as they did here, that any public official should proceed further, go ahead and agree to buy the property which at first was not considered necessary for highway purposes. And I feel that this is a matter which should be heard at this time on its merits and disposed of and then appeal can be taken by either party that may so desire. At any rate, such is the ruling of the court at this time. * * * I personally do not think that the matter of value has anything to do with it. However, counsel on both sides may have different opinions regarding that." (Record, pp. 57-58.)

The Court: "Well, it appears from the evidence before the court up to this time, as I understand it, that the State highway department since this road was first designated did not consider that there would be any compensatory damage to the property of Mrs. Appleton; and her property was not, as I understand it, mentioned in the original proceedings at all. That thereafter, through petition by Mrs. Appleton, which was objected to strenuously by the State, she was entitled under the order of this court to have the property viewed by commissioners appointed by this court, which they did accordingly; that there was an appraisal of damages by the viewers in some amount perhaps mentioned, or rather shown, as $3,000.00; that the State appealed from the award to the District Court of this County, and that the grounds for appeal are before the court; that the appeal was never brought to trial before a jury of the county, and that some time thereafter the State Highway Commissioner took the matter away from the court and from a jury to pass upon that matter of their appeal, and the right to determine the amount of damages by some sort of purchase; and that is the situation we have here now.

"As I have suggested before, 'If that power lies in the hands of any one man in this state' to do what was done in this case, as the evidence shows, irrespective of the amount involved, we have

sold our birthright. And the motion is denied, with exception to the State and to Mr. Murphy. And we will proceed with the testimony." (Record, pp. 193-194.)

Included among the findings of the court was the following:

"That the amount which it is proposed to pay said Elsie M. Appleton for said property under the terms of such stipulation of settlement is in excess of and out of proportion to the actual value of said property, and *that such property is not needed for right of way purposes within the meaning of said Section 2554 of Mason's Minnesota Statutes,* and has never been designated by the Commissioner of Highways as being in or a part of the 'right of way' for said highway; and that, by reason of the facts heretofore found, such proposed payment constitutes an unauthorized and unlawful expenditure of public funds. That the Commissioner of Highways has not the authority under the statutes or otherwise to acquire by purchase any real estate lying outside the actual right of way as designated by him, whether said real estate is adjacent to the highway or distant therefrom." (Italics supplied.)

Attached to the findings was a very able and comprehensive memorandum by the trial court including the following statement:

"By the action of the parties in making the contract in this case, the Commissioner of Highways wanders off the right of way established by him under his previous orders and, without any change or variation thereof, agrees to purchase for the State with State money adjacent property, an act which he, I feel, has no authority to do, especially in view of the fact that prior thereto, through the State's stipulation with the property owner, the proceeding by condemnation had been invoked. By the contract of October 15, 1935, we find the appraisement by duly appointed commissioners disregarded, the chance to have the matter passed upon by a jury of Redwood County, on the State's appeal, obliterated, and the usual and ordinary method of determination of the issues by court and jury circumvented.

"Prior decisions of our courts have disclosed that tremendous powers have been in the past, through constitutional amendment

and legislative act, vested in the Commissioner of Highways of the State. As to those matters we have sold our birthright. But to claim, as is done in this case, that the Commissioner of Highways may, through Section 2554 of the statutes of Minnesota, step off from the duly designated right of way as ordered by himself and invest the State's money in other real estate, even though near the highway, even though it may be for purposes of beautifying the adjacent land, or for purely aesthetic purposes, or even for removal of structures thereon, without invoking the orderly process of condemnation, is more than I feel should be approved, nor can I feel that that is the intention of the statute.

"Under the decisions of our courts heretofore very properly rendered (in view of our statutes), the Highway Commissioner may well have felt himself a runner-up to Alexander Selkirk regarding whom one little verse was read to the court in the argument of counsel:

" 'I am monarch of all I survey,
My right there is none to dispute;
From the centre all 'round to the sea,
I am lord of the fowl and the brute.'

"And if I am wrong in my understanding of the law, if the Highway Commissioner has the power claimed for him by the Attorney General, then the power that Alexander Selkirk thought he had was as nothing compared with that of our Highway Commissioner.

"Counsel for the State suggest in their last brief that in my memorandum I should suggest something to still certain propaganda about this case. I do not know that there is any, nor do I have any power to do that. But I will say that whatever appears to have been mentioned by the Court as to the power of the Commissioner of Highways has reference to that office itself at any time, to whatever party the incumbent may belong. I do not hesitate to state that I hold the present Highway Commissioner, N. W. Elsberg, and his very able assistant, S. Rex Green, in high esteem."

Trunk highway No. 19 runs east and west through Redwood Falls, this state. It intersects with Minnesota street, which runs

north and south. Prior to the institution of the condemnation proceedings, the property in question belonged to one Elsie Appleton and consisted of an area 115 feet by 70 feet located at the southwest corner of the intersection of trunk highway No. 19 and Minnesota street and abutting both highways. There appears to be some confusion as to whether the Appleton property abuts the right of way of trunk highway No. 19 or lies a few feet therefrom. It is my understanding that it abuts the highway and that the trial court so found.

The Appleton property was not included in the original condemnation proceedings but was brought into the proceedings by order of the court, upon application of the owner, based upon the ground that her property sustained serious damage by reason of the construction of the highways. The commissioners appointed for the purpose of awarding damages viewed the premises and awarded the owner damages in the sum of $3,000 although no part of the fee of the property was taken. The state appealed from the award, and while the appeal was pending an agreement was entered into between the commissioner of highways and the owner of the property wherein and whereby the commissioner contracted to purchase the land outright for the sum of $8,000, the owner to have the right to remove the buildings from the site within a period specified in the purchase agreement, a substantial part of the payment not to be made until the buildings were removed. These proceedings were instituted by three taxpayers of the county to enjoin the commissioner from purchasing the property and to enjoin the state auditor and state treasurer from paying therefor. From the judgment entered pursuant to findings of fact and conclusions of law granting the relief asked for, this appeal was taken.

If the only question involved had to do with the fact that the land about to be purchased was outside the confines of the order of designation filed, there would have been no occasion for making a finding as to the question of value or a finding upon the question of necessity.

The power of the commission to acquire property for the purposes specified in art. 16, § 1, of the constitution of the state, by purchase,

gift, or condemnation, in the manner provided by statute, is conceded. 1 Mason Minn. St. 1927, § 2554, subd. 1. That power was challenged at one time and approved by this court in the case of State by Hilton v. Voll, 155 Minn. 72, 76, 77, 192 N. W. 188, 190, wherein Mr. Justice Holt writing for the court said:

"Respondents argue that the court and not the commissioner of highways is the final arbiter as to what land may be taken for a trunk highway, because chapter 323, p. 406, Laws 1921, does not 'expressly provide for such taking and specifically prescribe the procedure connected therewith,' and hence is excepted from the operation of the provision of chapter 41, G. S. 1913, by chapter 353, Laws 1921, amending section 5395, G. S. 1913. But it seems to us the amendment clearly indicates that as to the taking of land for roads the provisions of chapter 323, p. 406, Laws 1921, were deemed adequate and should govern. Not only the acquisition of the right of way for trunk highways, but for all other highways is therein provided for. The only instance in which the court and not the commissioner, is to determine whether a public use and public necessity are involved is when it is sought to drain lands for the improvement or benefit of a trunk highway (section 60, c. 323, p. 450, Laws 1921). The taking by the commissioner of a right of way under said chapter 323 is specifically prescribed and very simple, it is by making an order covering the land selected for the trunk highway involved.

"Respondents cite numerous authorities where, either under authority conferred by statute or by reasonable implication, it has been held that the court was the agency to determine whether the taking was necessary for a public use. *These are not controlling here, for we conclude that the legislature delegated the authority to the commissioner of highways as to the taking of a right of way for trunk highways.* No power to a railway company desiring to cross the track of another company to designate the place of crossing by order, or otherwise, was given in the act construed in In re St. Paul & N. P. Ry. Co. 37 Minn. 164, 33 N. W. 701.

"It may well be that, if the order of the commissioner of highways in locating the right of way was arbitrary and capricious, it

could be reached by an appropriate remedy in court, such as certiorari. But no question of that sort is here presented." (Italics supplied.)

It must be remembered in this case that there was no finding by the trial court that the commissioner's action was arbitrary or capricious or that there was any fraud involved; in fact the commissioner and his deputy were given certificates of character by the trial court.

This court has always held that whether the public interests require or justify a particular improvement is legislative in character and not judicial. Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289; and Village of Lamberton v. C. & N. W. Ry. Co. 196 Minn. 597, 265 N. W. 801. In the case of Packard v. County of Otter Tail, the court collected the authorities and in the opinion said [174 Minn. 348]:

"The rule of law is well established in this state that the determination by the county board of a question of this character will be disturbed by the courts only when the determination is based upon an erroneous theory of law or when it clearly appears that the decision is arbitrary, oppressive, fraudulent or in unreasonable disregard of the best interests of the territory affected, or such as to work manifest injustice."

"As to the amount of land appropriated in matters of this kind, the Department of Public Works is vested with a broad discretion in determining the amount to be taken. It has a right to, and should, anticipate the future needs of the municipality, and its action in the premises will not be interfered with except in a clear case of abuse of the discretion vested in it. * * * The general rule is, that where the right of eminent domain is granted, the question of the necessity for its exercise and in what cases it may be exercised, within constitutional restrictions, is a legislative and not a judicial question, and its exercise is not a proper subject for judicial interference or control unless to prevent a clear abuse of

such power." Department of Public Works v. McCaughey, 332 Ill. 416, 420, 163 N. E. 795, 797.

The above case involved among other things a triangular piece of a little more than an acre at the junction of the proposed road and the old road. It was claimed there was no necessity for the taking. The court held that it was proper to acquire the property for future use.

That leaves for determination the sole question as to whether without judicial interference the commissioner of highways has the right under existing statutes to acquire by purchase land outside of the right of way as previously designated by him in an order fixing the final and definite location of the highway, there being nothing arbitrary, capricious, or fraudulent in his action in procuring additional property either for the purpose of widening a highway or for a sight corner. I think he has, and I cannot read into the statute the construction given it by the majority opinion. I construe 1 Mason Minn. St. 1927, § 2554, subd. 4(b), to have to do wholly with the location of the highway rather than the acquisition of the property over which it is to be constructed. If the construction given in the majority opinion were strictly adhered to the commissioner of highways would have no power to acquire property outside of the original road limits either for the purpose of widening a trunk highway or for the purpose of acquiring sight corners after it was once designated by final order. Furthermore, the statute, § 2554, subd. 1, expressly gives the commissioner the right to purchase grounds and buildings necessary for the storing and housing of material, machinery, tools, and supplies. Surely it could not be claimed that property purchased for such purposes could or should be included in an order fixing a definite location of a trunk highway, nor do I find anything in the statute requiring the commissioner of highways to make an order of any kind pertaining to the purchase of property for any of the purposes just referred to. It further seems to me that when the legislature vested in the commissioner of highways the great power it has vested in him with reference to the laying out and construction of trunk highways it assumed he would properly and efficiently per-

form the duties of his office and, with that in mind, subjected him to removal at the pleasure of the chief executive of the state. Therefore, when the commissioner of highways acquires by purchase a tract of land, his act in so doing carries with it a presumption either that it is to be used for highway purposes and subsequently included in an order to be made by the commissioner of highways or that it is to be used for other highway purposes without the necessity of an order specifying the purposes for which it is to be used. This does not prevent court interference where it is shown that the action of the commissioner of highways was arbitrary, capricious, or unreasonable or where fraud intervenes; but, as hereinbefore pointed out, the court after a full hearing failed to find that any of these elements existed, and without such finding I cannot see how the action of the commissioner can be interfered with by the court. For the reasons stated, it is my opinion that the judgment appealed from should be reversed.

MR. JUSTICE PETERSON, having been attorney general when the case was first argued and submitted, took no part in its consideration or decision.

