**Larry THOMPSON, Plaintiff-Appellant,**

v.

**McDONNELL DOUGLAS CORPORATION,
Defendant-Appellee.**

**No. 76–1601.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1977.
Decided March 22, 1977.

Louis Gilden, St. Louis, Mo., for plaintiff-appellant.

Thomas C. Walsh (argued), S. Richard Heymann, and Hollye E. Stolz, St. Louis, Mo., on brief, for defendant-appellee.

Before CLARK, Associate Justice, Retired,* GIBSON, Chief Judge, and HEANEY, Circuit Judge.

HEANEY, Circuit Judge.

Larry Thompson, a black, brought this action under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. against his former employer McDonnell Douglas Corporation. Thompson alleged that he was discriminated against with respect to pay, that he was discriminatorily transferred, that he was denied a promotion to a position for which he was qualified and that he was constructively discharged. The opinion of the District Court denying relief is reported at 416 F.Supp. 972 (E.D.Mo.1976). The District Court held that even if Thompson had established a prima facie case of racial discrimination, McDonnell Douglas had sufficiently rebutted his charges. We affirm.

▮▮ In a Title VII case, the plaintiff must establish a prima facie case of discrimination before the burden of proof shifts to the defendant to show valid rea-

sons for its actions. The plaintiff must then be given an opportunity to demonstrate that the defendant's asserted reasons are mere pretexts. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For the purpose of this opinion, we assume, without deciding, that the burden of proof properly shifted to the defendant, McDonnell Douglas. However, the findings of the District Court that McDonnell Douglas did not discriminate against Thompson because of his race and that its justification for its actions were not pretextual, are supported by substantial evidence and we cannot say they were clearly erroneous. *Garrett v. Mobil Oil Corp.*, 531 F.2d 892, 895 (8th Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976); *Green v. McDonnell Douglas Corp.*, 528 F.2d 1102, 1104–1107 (8th Cir. 1976); *King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir. 1975); *Naraine v. Western Electric Company, Inc.*, 507 F.2d 590, 593–594 (8th Cir. 1974). We thus find it unnecessary to decide whether Thompson established a prima facie case of racial discrimination.

I. *Thompson's Claim of Pay Disparity.*

Thompson worked as a computer operator for McDonnell Douglas from July, 1966 to February, 1972. During the winter of 1970, Thompson obtained the pay records for Geraldine Orso, John Sniderjohn, Don Pindell and Roger McMahon, all of whom were also computer operators. The records revealed that while Orso and Pindell were earning more than Thompson, Sniderjohn and McMahon were both earning less. After Thompson complained to his supervisors, an investigation was initiated of any pay differences among computer operators.

Initially, the manager of Equal Employment Opportunity Programs for McDonnell Douglas thought the problem might be best resolved by granting Thompson pay parity. Upon further investigation, however, he concluded that the pay differentials were

* TOM C. CLARK, Associate Justice, Retired, Supreme Court of the United States, sitting by designation.

justified by Pindell's supervisory status and Orso's better qualifications and performance ratings and greater seniority. The District Court found that the difference in pay between Orso and Thompson was further justified by the additional work Orso was required to perform because of Thompson's frequent absences from his work station. The District Court's finding that McDonnell Douglas's justifications were not pretextual is supported by the record.

## II. Thompson's Claim of Discriminatory Transfer.

During the first six months of his employment at McDonnell Douglas, Thompson was assigned to the first shift in scientific computer operations. Subsequently, he was assigned to the third and then to the second shift in the same department. In January of 1971, he was again assigned to the first shift to accommodate his junior college class schedule. Then in May, 1971, he was transferred to a different department in the administrative rather than the scientific area of computer operations.

Thompson's transfer from scientific computer operations was precipitated by a conversation on April 30, 1971, between Thompson and Virginia Stafford, a clerk in his department. Stafford reported to her supervisor that during the conversation, Thompson used obscene language and made veiled sexual threats against the supervisor's wife. The supervisor prepared an Employee Incident Report (EIR), a copy of which was given to Thompson. Two supervisors discussed the EIR with Thompson at a meeting on May 5, 1971. One of the supervisors testified that Thompson did not deny the report and was concerned about his future with McDonnell Douglas. At trial, Thompson denied the version of the conversation contained in the EIR and testified that he had not been asked to relate his version of the incident. At the meeting, a lateral transfer to administrative computer operations was suggested.

The District Court found that the reason for the transfer was to avoid personnel conflicts resulting from the incident, to eliminate the possibility that such conflicts would jeopardize Thompson's opportunity for advancement and to enable him to become familiar with the administrative area of computer operations where he had a better chance for promotion. A review of the record convinces us that the reasons for the transfer given by McDonnell Douglas are sufficient justifications for its actions and are not a mere pretext. *See Garrett v. Mobil Oil Corporation, supra; Glover v. Daniel,* 318 F.Supp. 1070 (N.D.Ga.1969), aff'd per curiam, 434 F.2d 617 (5th Cir. 1970).

## III. Thompson's Claim of Discrimination in Promotion.

An interest in promotion to the position of programmer trainee was expressed by Thompson early during his employment at McDonnell Douglas. He was informed that he needed an Associate of Arts degree, an above-average work record and a recommendation from his supervisor to become a programmer trainee. He was further advised that he should continue for a full four-year degree and that he should seek a transfer from the scientific to the administrative area of computer operations.

In June, 1971, Thompson received an A.A. degree. However, with the single exception of the slightly above-average rating he received on February 4, 1971, he consistently received only average performance ratings. Evidence was also presented that he was frequently absent from his work station.

There is ample evidence in the record to support the finding of the District Court that Thompson failed to satisfy the requirements for a promotion and thus has failed to satisfy the requirement of *McDonnell Douglas v. Green, supra,* "that * * * [he] was qualified for a job for which the employer was seeking applicants." *Id.* at 802, 93 S.Ct. at 1824. *See Pettit v. United States,* 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973). Title VII is designed only to eliminate discrimination and not to require the hiring of unqualified personnel. *Griggs v. Duke Power Company,* 401 U.S. 424, 434, 91

S.Ct. 849, 28 L.Ed.2d 158 (1971); *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1063 (8th Cir. 1975).

IV. *Thompson's Claim of Constructive Discharge.*

Thompson contends that the combination of the pay differential, the discriminatory transfer and the discriminatory refusal to promote resulted in his involuntary resignation. A constructive discharge occurs when "an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." *Muller v. United States Steel Corporation*, 509 F.2d 923, 929 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975).

Thompson would have us hold that the actions of McDonnell Douglas created intolerable working conditions which satisfied the requirement for a constructive discharge. We agree with Thompson that the doctrine of constructive discharge developed in labor cases is applicable to civil rights cases as well. *See Muller v. United States Steel Corporation, supra; Young v. Southwestern Savings and Loan Association, supra.* We cannot agree, however, that McDonnell Douglas deliberately made conditions intolerable so that Thompson had no alternative but resignation. On the contrary, there is evidence that McDonnell Douglas provided Thompson with extensive individual career counseling and accommodated his hours with ꞏhis junior college schedule. Furthermore, when Thompson was transferred, it was to a department where the District Court found he was more likely to receive a promotion since he lacked the background for scientific programming.

Affirmed.