Helen B. BROWN, Appellant,

and

Jonetta Yenter, Plaintiff,

v.

Tony KASSOUF and Naim Kassouf, Defendants,

and

State Farm Mutual Automobile Insurance Company, Appellee.

No. 95–1596.

Supreme Court of Iowa.

Jan. 22, 1997.

T. Todd Becker of Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Matthew J. Nagle of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

The district court ruled that a settling and a nonsettling plaintiff were bound by a jury's verdict that an alleged tortfeasor was not at fault. The plaintiffs' insurance carrier thereby avoided any obligation to pay underinsured motorist benefits to the plaintiffs. Only the settling plaintiff appealed. The appeal raises the following question: Was the settling plaintiff so connected in interest with the nonsettling plaintiff as to have had a full and fair opportunity to litigate the fault issue? We say yes and affirm.

I. *Background Facts and Proceedings.*

On April 14, 1990, Jonetta Yenter and Helen Brown were in Yenter's van. Yenter was driving. Brown, Yenter's mother, was sitting in the front passenger seat. Yenter had stopped the van in a two-lane driveway of a commercial-building-parking lot fronting First Avenue East in Cedar Rapids. Yenter

was waiting for traffic to clear so that she could proceed onto First Avenue.

About this time, Tony Kassouf was driving a vehicle in an inside lane on First Avenue, which is a four-lane thoroughfare. In the curb lane and behind Kassouf were two vehicles: one driven by Bob Miell and behind Miell another driven by Francis Olish. Kassouf had intended to enter the parking lot driveway where Yenter and Brown were waiting.

Kassouf abruptly changed from the inside lane to the curb lane in an attempt to enter the lot. Miell was able to stop as Kassouf came in front of him, but Olish could not. Olish struck Miell, Miell struck Kassouf, Kassouf struck Yenter's van.

Yenter and Brown allegedly suffered personal injuries in the collision. Both women filed suit against (1) Tony Kassouf, (2) Naim Kassouf (the owner of the vehicle Tony Kassouf was driving), and (3) Olish.

The Kassoufs had liability insurance of $25,000 per person and $50,000 per occurrence. Olish had liability insurance of $250,000 per person and $500,000 per occurrence.

Eventually Yenter and Brown dismissed their claims without prejudice after Olish settled under a confidential agreement.

Later Yenter and Brown filed a second lawsuit naming the Kassoufs and State Farm Mutual Automobile Insurance Company (State Farm) as defendants. State Farm provided Yenter underinsured motorist coverage. Brown was covered as an "occupant" of Yenter's van under the underinsured motorist coverage provision.

The lawsuit did not name Olish. The lawsuit alleged that Tony Kassouf's negligence caused Yenter's and Brown's injuries. The lawsuit also alleged that (1) the Kassoufs' liability insurance coverage was inadequate to compensate the two women for their damages and (2) State Farm should pay the difference up to the underinsured motorist coverage limit, which was $100,000 per person.

The district court sustained State Farm's motion to sever it from the lawsuit. In its ruling the court reserved "the issue of wheth-

er State Farm ... is bound by the verdict in said case." The court further stated that "[s]aid issues can be raised under the doctrine of issue preclusion ... or by any other lawful action and/or proceeding."

Shortly before the trial against the Kassoufs, their insurer offered Brown the $25,-000 liability policy limit. Brown accepted and released the Kassoufs.

Yenter, however, went to trial against the Kassoufs. Yenter and Brown testified at trial. There were no allegations that Yenter or Brown were at fault. Nevertheless, the jury found that Tony Kassouf was not at fault in the operation of his vehicle at the time and place of the collision.

Following this trial, State Farm filed an application for adjudication of law points. State Farm asked the court to rule that (1) the doctrine of issue preclusion prevented Yenter and Brown from relitigating the *Yenter v. Kassouf* apportionment of fault in the trial against State Farm for underinsured motorist benefits, (2) State Farm was only obligated to pay the lesser of either the amount paid by released parties or the underinsured coverage limits, and (3) Yenter and Brown had to prove their damages exceed the amount of "available liability insurance."

In their resistance, Yenter and Brown conceded that issue preclusion applied to Yenter. They also conceded that State Farm was only obligated to pay the lesser of either the amount paid by released parties or the underinsured coverage limit, which was $100,-000 per person. They disputed that the doctrine of issue preclusion applied to Brown because she was neither a party nor in privity with a party in the *Yenter v. Kassouf* trial. They also disputed that the Kassoufs' liability limit was the only applicable limit.

Following a hearing, the district court ruled that issue preclusion applied to both Yenter and Brown and the jury's apportionment of fault in *Yenter v. Kassouf* was binding on both plaintiffs. The court concluded that Brown was a party in *Yenter v. Kassouf* because (1) she was a claimant when the original suits were filed and (2) a claimant is a "party" for purposes of Iowa's comparative

fault statute. *See* Iowa Code § 668.2(1) (1990) (defining "party" as a claimant).

The court also ruled that the most State Farm would be obligated to pay in underinsured motorist benefits is the lesser of the following: the amount by which the plaintiffs' damages exceed the amount paid to them by the released parties or the underinsured coverage limit of $100,000 per person.

Finally, the court ruled that before Brown could recover underinsured motorist benefits she had to prove her damages exceeded $250,000. The court made the same ruling as to Yenter. The court reached this conclusion relying on the following language in the underinsured motorist provision:

> The most we will pay will be the lesser of:
> a. the amount by which the insured's damages for bodily injury exceed the amount paid to the insured by or for the person or organization who is or may be held *legally liable* for the bodily injury; or b. the limits of liability of this coverage.

(Emphasis added.) The court reasoned that because of issue preclusion only Olish remained legally liable. Olish's liability policy limit was $250,000 per person. Under the above-quoted provision Brown had to prove her damages exceeded $250,000 to recover underinsured motorist benefits. Yenter likewise had to prove her damages exceeded $250,000 to recover underinsured motorist benefits.

Following this ruling, State Farm moved for summary judgment. Brown conceded her damages did not exceed $250,000. Yenter conceded the same. The concessions came in response to requests for admissions. The plaintiffs waived their right to respond and to have a hearing on the motion for summary judgment.

The court granted the motion for summary judgment. Only Brown appealed.

On appeal, Brown does not challenge the propriety of the district court's summary judgment ruling if the court's ruling on the motion for adjudication of law points is correct. We think issue preclusion applies to Brown but not for the reasons relied on by the district court. Because we find that issue preclusion applies to Brown, we conclude

the district court reached the right result on State Farm's motion for adjudication of law points.

## II. *Issue Preclusion.*

The doctrine of issue preclusion prevents a party to a prior action in which a judgment has been rendered from relitigating in a subsequent action issues raised and resolved in the previous action. *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981).

Before issue preclusion applies, four prerequisites must be established:

(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action; and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter,* 300 N.W.2d at 123.

Generally, in addition to these four prerequisites, either (1) the parties in both actions must be the same (mutuality of parties), or (2) there must be privity between the party against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation. *Id.* A "privy" for issue preclusion purposes means "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Goolsby* v. *Derby,* 189 N.W.2d 909, 914 (Iowa 1971).

■ Neither mutuality of parties nor privity is required in all cases where issue preclusion is invoked. Neither requirement is necessary, for example, where issue preclusion is applied defensively *if* the party against whom issue preclusion is invoked was

> so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.

*Opheim v. American Interinsurance Exch.,*
430 N.W.2d 118, 120 (Iowa 1988).

When we speak of a "defensive use" of issue preclusion, we ordinarily mean the following: "[A] stranger to the judgment [in the former action], ordinarily the defendant in the second action, relies upon [that] judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense." *Hunter,* 300 N.W.2d at 123.

State Farm is a stranger to the judgment rendered in the *Yenter v. Kassouf* trial. Brown is also a stranger to that judgment. In effect we have one stranger to the judgment in a prior action invoking issue preclusion defensively against another stranger to that judgment.

We seriously doubt that Brown was a "party" in the *Yenter v. Kassouf* trial because of her "party" status under our comparative fault statute. *See* Iowa Code § 668.2(1) (defining "party" as a claimant). This, of course, was one of the district court's reasons for invoking issue preclusion. In addition, the court concluded all four prerequisites for the doctrine had been established.

We need not reach the issue whether Brown was a party in the *Yenter v. Kassouf* trial because State Farm is invoking issue preclusion defensively. And, as mentioned, mutuality of parties and privity are not necessary when issue preclusion is used defensively.

A. *The four prerequisites for issue preclusion in this case.* Kassouf's fault was the identical issue in the prior case (*Yenter v. Kassouf*) and in the present case.

This issue was raised and litigated in the prior case.

To recover against Kassouf, Yenter had to establish that Kassouf was at fault. Kassouf's fault was therefore material and relevant to the disposition of the prior case.

The jury determined that Kassouf was not at fault. This determination was necessary and essential to the resulting judgment against Yenter and in favor of Kassouf.

All four prerequisites for issue preclusion are therefore established in this case. That brings us to the critical issue.

B. *Was Brown so connected in interest with Yenter as to have had a full and fair opportunity to litigate the issue of Kassouf's fault in the prior case?*

We faced a similar issue in *Opheim v. American Interinsurance Exchange,* 430 N.W.2d 118 (Iowa 1988), which we think controls our disposition of the issue here. In *Opheim,* Kevin Opheim was injured when his car collided with a car driven by Tim Allie. The car Allie was driving belonged to Lyle Moss. American Interinsurance Exchange (American) brought a declaratory judgment action against Allie, its insured, seeking a ruling that there was no coverage for the collision under Allie's policy. Coverage under the policy depended on whether Allie had, or reasonably believed he had, Moss' permission to drive the car.

During the declaratory judgment trial, there was testimony that Lyle Moss was separated from his wife, Ellen, and during the separation Ellen was living with Allie. At the time the Mosses separated, Ellen took the car that was involved in the collision. Lyle testified he let Ellen take the car upon the express condition that she allow no one else to drive it. Ellen testified she was not certain whether she had told Allie that her husband was the sole owner of the car, but she thought Allie knew. At first, Allie testified he did not know that Lyle owned the car. Later, Allie testified Ellen had told him he had Lyle's permission to use the car. The declaratory judgment court found Allie did not have, or could not have reasonably believed he had, Lyle's permission to use the car. The court, therefore, determined there was no coverage.

Later, Opheim sued Allie for injuries Opheim sustained in the accident and obtained a $15,000 judgment. After a general execution against Allie's property was returned unsatisfied, Opheim sued American under Iowa Code chapter 516 (1985). Opheim was not a party to the earlier declaratory judgment action against Allie. Nevertheless, American contended in its motion for

summary judgment that Opheim was precluded by the declaratory judgment from litigating the issue of American's liability under its policy with Allie. The district court overruled the motion and later granted Opheim judgment for $15,131.40, with interest and costs.

American appealed and we reversed. The parties did not dispute the four prerequisites for issue preclusion were established. Rather the fighting issue was this: "[W]hether Opheim, as the injured person, was so connected in interest with Allie, the insured, in the declaratory judgment action as to have had a full and fair opportunity to litigate American's liability under its policy issued to Allie." *Opheim,* 430 N.W.2d at 120. Finding for American on this issue, we said:

> In the present case, Opheim and Allie shared an interest in securing coverage under Allie's policy with American. Although we can envision cases in which the intensity of the insured's interest in securing coverage is insufficient to say he has adequately represented the injured person's similar interest as well as his own, this is not such a case. The record reflects Allie presented a vigorous defense to American's declaratory action. He engaged legal counsel to prepare his case. His testimony regarding the circumstances surrounding the operation of Moss's car fully litigated the issue of whether the words of the policy provided coverage. The interest of Allie and Opheim in securing this coverage is identical. In that regard, we do not believe Opheim could have litigated this issue in a manner materially different from that employed by Allie.

*Id.* at 121.

■ The case before us now is similar. Brown and Yenter shared an interest in proving as much fault as they could against Kassouf. Yenter, of course, had not settled with Kassouf. Her incentive, therefore, would be to prove all the fault she could against Kassouf to avoid having to give any credit to Kassouf for any part of her settlement with Olish. *See Thomas v. Solberg,* 442 N.W.2d 73, 77 (Iowa 1989) (a plaintiff's recovery against nonsettling defendants is reduced by the percentage of fault allocated to settling defendants).

Additionally, from the standpoint of underinsured motorist benefits, both Yenter and Brown would benefit from proving as much fault as they could against Kassouf. The underinsured motorist provision obligated State Farm to pay "the amount by which the insured's damages for bodily injury exceed the amount paid to the insured by or for the person ... who is or may be held legally liable for the bodily injury." Under this provision, if the jury had found Kassouf 100% at fault, both Yenter and Brown would now be in the position of arguing that the floor for underinsured motorist benefits is Kassouf's policy liability limit of $25,000 per person. In other words, Yenter and Brown would each only have to prove that they each sustained damages in excess of $25,000 for each to have a claim under the underinsured motorist coverage provision. This is because only Kassouf, and not Olish, would be the person "who is or may be legally liable for the bodily injury."

Instead, the jury found Kassouf was not at fault, leaving only Olish "who is or may be held legally liable for the bodily injury." Now both Yenter and Brown are faced with a floor of $250,000: Olish's policy liability limit per person. Under this scenario Yenter and Brown must each prove their individual damages exceeded $250,000 for each to have a claim under the underinsured motorist provision.

Moreover, Yenter's and Brown's interests were identical on the issue of liability. There were no allegations of fault against either party on this issue.

Turning our attention to the "full and fair opportunity to litigate" prong, we think the facts here are stronger than those in *Opheim.* Opheim was a stranger to the judgment entered in the declaratory judgment action and was never a party to that action. Brown was likewise a stranger to the judgment in the *Yenter v. Kassouf* trial. In contrast to Opheim, however, Brown was a party until she settled shortly before trial. Brown, Yenter, and other witnesses testified on the fault issue. Brown and Yenter shared

the same attorney, who vigorously litigated Kassouf's fault.

Given all of these circumstances we think litigation on the fault issue would have been the same whether or not Brown had settled.

### III. *Conclusion and Disposition.*

We therefore conclude Brown was so connected in interest with Yenter as to have had a full and fair opportunity to litigate the fault issue. For this reason and because the four prerequisites for issue preclusion have been established, we further conclude Brown is bound by the jury's determination that Kassouf was not at fault. We affirm the district court's issue preclusion determination in its ruling on State Farm's motion to adjudicate law points. We also affirm the district court's ruling granting State Farm summary judgment and dismissing the case.

**AFFIRMED.**