# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2551

_____

Howard F. Haberer,           *
                               *

         Appellant,        *

                               *   Appeal from the United States
      v.                       *   District Court for the
                               *   Northern District of Iowa

Woodbury County; David Amick,    *

                               *

         Appellees.        *

_____

Submitted:   March 11, 1999

Filed:   August 27, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
      NANGLE,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

       Howard F. Haberer appeals from an order entered in the United States District
Court [2] for the Northern District of Iowa, granting partial summary judgment in favor

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern
District of Missouri, sitting by designation.

[2]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern
District of Iowa, to whom the case was referred by consent of the parties pursuant to
28 U.S.C. § 636(c).

of Woodbury County, Iowa, and David Amick, on his 42 U.S.C.§ 1983 civil rights claim for constructive discharge. Haberer v. Woodbury County, No. C96-4048 (N.D. Iowa Apr. 15, 1998) (order granting partial summary judgment). For reversal, appellant contends that the district court erred in dismissing his constructive discharge claim on the ground of issue preclusion. For the reasons discussed below, we affirm the judgment of the district court.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1343. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellant timely filed a notice of appeal pursuant to Fed. R. App. P. 4(a). As noted above, the district court granted partial summary judgment in favor of appellees on appellant's constructive discharge claim only, leaving unresolved appellant's retaliation claims. Appellant later voluntarily dismissed his retaliation claims and the district court entered judgment in favor of appellees.

Background

The background facts are not disputed. The following statement of facts is taken in large part from the opinion of the state supreme court. Haberer v. Woodbury County, 560 N.W.2d 571, 573-74 (Iowa 1997). For fourteen years appellant served as a deputy sheriff in Woodbury County, Iowa. When appellant resigned on July 16, 1995, the sheriff was appellee Amick. In mid-1993, appellant was divorced and he was ordered to pay child support. At about the same time, or immediately thereafter, a female friend of appellant filed criminal complaints against him because of a personal dispute. Amick referred the complaints to the Iowa Division of Criminal Investigation (DCI). After the DCI had completed its investigation, it filed five criminal charges against appellant. These charges were in no way related to the criminal complaints filed by appellant's female friend. Subsequently, the state court dismissed the criminal charges and its dismissal was affirmed on appeal by the state supreme court. State v. Haberer, 532 N.W.2d 757, 758 (Iowa 1995).

-2-

While the criminal charges were pending, Amick placed appellant on a paid suspension and prohibited him from engaging in any off-duty law enforcement work. After appellant had been on a paid suspension for eighteen months and while his appeal was still pending before the state supreme court, Amick allowed him to return to work, provided that appellant would agree to a thirty-day unpaid suspension and enter into a "Last Chance Agreement." The agreement was to last for one year.

On July 16, 1995, the state Child Support Recovery Unit notified appellant that his wages would be garnished because of unpaid child support. According to appellant, the garnishment notice was "the straw that broke the camel's back." The next day appellant orally submitted his resignation to the assistant chief, stating "I can't do this anymore." Appellant turned in his badge, identification, name plate, and the keys to his office and car. Four days later, appellant sought to withdraw his resignation; however, Amick refused to permit him to withdraw his resignation.

Pursuant to Iowa Code § 341A.12, pertaining to the removal, suspension, and demotion of deputy sheriffs, appellant wrote the Woodbury County Civil Service Commission (CSC) requesting a hearing regarding the circumstances surrounding his termination and resignation from the sheriff's department. The CSC held the hearing on August 4, 1995, and allowed each party to present its respective position.

Appellant argued before the CSC that he had been constructively discharged, claiming that the following chain of events caused him to resign: (1) Amick initiated a criminal investigation against him; (2) the investigation led to the filing of criminal charges against him; (3) the criminal proceedings cost him thousands of dollars to defend; (4) during a portion of the proceedings, Amick placed him on paid suspension, during which time he was not allowed to engage in off-duty law enforcement work; (5) as a condition of returning to work after the criminal proceedings, he agreed to a 30-day unpaid suspension; (6) when he returned to work, he was assigned to an administrative position for which he had no experience; (7) all these incidents led to

increased stress and financial problems; and (8) in time, these incidents caused him to fail to pay his child support and to resign after he was notified that his wages would be garnished.

Appellant also contended that he had attempted to withdraw his resignation, but Amick had refused to allow him to do so, even though Amick had allowed other personnel to withdraw their resignations and to keep their jobs.

The CSC found that appellant had "voluntarily resigned his deputy sheriff's position solely as a result of his wages having been garnished and that no action on the part of the Sheriff's Department constituted harassment or placed any undue pressure or stress upon . . . Haberer to resign so as to constitute a termination or removal." Haberer v. Amick, slip op. at 4 (Woodbury County Civil Service Comm'n Aug. 15, 1995). The CSC did not address the withdrawal of resignation issue. Pursuant to Iowa Code § 341A.12, appellant appealed to the state district court, again raising the constructive discharge and withdrawal of resignation issues. The state district court affirmed the decision of the CSC, holding that there was substantial evidence to support the commission's finding of no constructive discharge. See Haberer v. Woodbury County, Nos. 111483C & 111484C, slip op. at 5 (Iowa Dist. Ct. Dec. 11, 1995). Thereafter, appellant appealed to the Iowa Supreme Court, again raising the same constructive discharge and withdrawal of resignation issues. The Iowa Supreme Court, after an exhaustive examination of each of the eight contentions argued before the CSC and the state district court, affirmed the state district court's decision, holding that appellant had produced no evidence to show or prove any of his alleged charges. See Haberer v. Woodbury County, 560 N.W.2d at 575-78.

Appellant then filed the present 42 U.S.C. § 1983 complaint in federal district court, alleging that he was retaliated against in his position as a deputy sheriff because of his opposition to Amick in the sheriff's election of 1992. He also alleged that he was constructively discharged by Amick on July 17, 1995. Appellant asserted the same

-4-

eight arguments on the constructive discharge issue that he had raised before the CSC, the state district court, and the Iowa Supreme Court.

The district court granted partial summary judgment in favor of appellees on the constructive discharge issue, holding that the claim must be resolved against appellant as a matter of law because of issue preclusion or collateral estoppel. See slip op. at 6. In a well-reasoned analysis, the district court applied Iowa law and rejected appellant's arguments that issue preclusion or collateral estoppel should not apply because he did not have a "full and fair opportunity" to litigate the constructive discharge issue in the prior action before the civil service commission, see slip op. at 3-4, and because the procedures available in the prior action were inadequate. See id. at 4-5. The district court concluded that issue preclusion or collateral estoppel precluded relitigation of the constructive discharge issue because the issue was specifically and directly raised and litigated in the prior action before the CSC and decided on the merits in the state courts, was material and relevant to the disposition of the state court proceedings, and was not only necessary and essential to the resulting state court judgment, it was the sole issue necessary to the disposition of the case. See id. at 6. The district court noted that the ruling did not dispose of the retaliation claims. See id. at 7. On April 28, 1998, however, appellant dismissed the remaining retaliation claims, and the district court entered judgment in favor of appellees. This appeal followed.

Standard of Review

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly

appropriate. E.g., Crain v. Board of Police Commissioners, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Discussion

Pursuant to federal law, judicial proceedings in one state will have the same full faith and credit in every court within the United States as they have by law in the courts of such state from which they are taken. 28 U.S.C. § 1738. Federal courts are obligated to give preclusive effect to issues decided by state courts even where the subsequent federal case is brought pursuant to 42 U.S.C. § 1983, see Allen v. McCurry, 449 U.S. 90 (1980), or under Title VII of the Civil Rights Act of 1964, see University of Tennessee v. Elliott, 478 U.S. 788 (1986). "' When an issue of law or fact is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" Hunter v. City of Des Moines, 300 N.W.2d 121, 123 (Iowa 1981) (quoting Restatement (Second) of Judgments § 68 (Tentative Draft No. 4, 1977). "Issue preclusion serves a dual purpose. First, it protects litigants from the 'vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation.' Second, it furthers the interest of judicial economy and efficiency by preventing unnecessary litigation." American Family Mutual Insurance Co. v. Allied Mutual Insurance Co., 562 N.W.2d 159 (Iowa 1997) (American Family), citing State ex rel. Casas v. Fellmer, 521 N.W.2d 738, 740-41 (Iowa 1994). Here, we apply Iowa law to determine whether appellant's § 1983 constructive discharge claim is barred by the prior state action.

Under Iowa law, issue preclusion applies if four prerequisites are established. First, there must be an identity of issues; second, the issue must have been raised and litigated in the prior action; third, the issue must have been material and relevant to the disposition of the prior action; and, finally, the determination made of the issue in the

prior action must have been necessary and essential to the resulting judgment. See Dolan v. State Farm Fire & Casualty Co., 573 N.W.2d 254, 256 (Iowa 1998). Before applying the four-part test, a status test must be met, i.e., "the parties in both actions must be the same," or "there must be privity between the parties against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation." Brown v. Kassouf, 558 N.W.2d 161, 163 (Iowa 1997). When issue preclusion is offered defensively,[3] i.e., as a shield rather than a sword, the status test is somewhat relaxed. See American Family, 562 N.W.2d at 164; Hunter v. City of Des Moines, 300 N.W.2d at 123. "Neither mutuality of the parties nor privity[4] is required where issue preclusion is applied defensively, if the party against whom issue preclusion is invoked was 'so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.'" American Family, 562 N.W.2d at 164, citing Brown v. Kassouf, 558 N.W.2d at 163-64 (internal citation omitted).

For reversal, appellant relies upon this court's decision in Smith v. Updegraff, 744 F.2d 1354 (8th Cir. 1984) (Updegraff). In Updegraff, a former deputy sheriff sued the county, the sheriff, members of the Civil Service Commission, and the county attorney for deprivation of rights under 42 U.S.C. §§ 1983, 1985 and 1986 after an earlier suit brought under Iowa Code § 341A. Both actions challenged former deputy

---

[3] "[T]he term 'defensive use' means: 'a stranger to the judgment in the former action, ordinarily the defendant in the second action, relies upon that judgment as conclusively establishing in his [or her] favor an issue which he [or she] must prove as an element of his [or her] defense.'" American Family Mut. Ins. Co. v. Allied Mut. Ins. Co., 562 N.W.2d 159, 164 (Iowa 1997), citing Brown v. Kassouf, 558 N.W.2d 161, 164 (Iowa 1997).

[4]"The 'privity' required for invoking issue preclusion means 'one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.'" Id., citing Brown v. Kassouf, 558 N.W.2d at 163(internal citation omitted).

Smith's discharge from the defendant county sheriff's department. In the earlier action, the Civil Service Commission, the reviewing state district court, and the Iowa Supreme Court, all upheld the decision under Iowa Code § 341A. This court applied Iowa issue preclusion law and held that issue preclusion or collateral estoppel did not apply and refused to bar the subsequent § 1983 action. See 744 F.2d at 1362-63.

Appellant's reliance is misplaced. In Updegraff, issue preclusion or collateral estoppel did not apply because the issues alleged to be precluded in the second lawsuit were not identical to the issues raised and litigated before the Civil Service Commission or the state district court. See id. at 1363. Here, the issue alleged to be precluded was identical to the issue raised and litigated in the prior action. Constructive discharge was the sole issue decided by the CSC and by the state district court.

Appellant also argues that issue preclusion or collateral estoppel should not have been applied because of problems of unfairness. He argues that he did not have a full and fair opportunity to litigate the constructive discharge issue before the CSC and in the state courts because state law limited the scope of the CSC hearing and judicial review in the state district court. Appellant also argues the procedures available before the CSC were inadequate; for example, appellant notes that there was no discovery available.

Appellant again relies on Updegraff. In that case this court held that res judicata or claim preclusion did not apply in part because the plaintiff "did not have a 'full legal opportunity for an investigation and determination' of the [conspiracy and constitutional misconduct claims he raised in the subsequent civil rights action]." 744 F.2d at 1362, citing Third Missionary Baptist Church v. Garrett, 158 N.W.2d 771, 775 (Iowa 1968). The plaintiff could not have presented the conspiracy and constitutional misconduct claims to either the Civil Service Commission or the state district court because the Civil Service Commission hearing was limited to whether the discharge was made in good faith and for cause and judicial review was limited to the evidence before the

-8-

Commission.  See id.  Thus, in Updegraff, the plaintiff could not have, as a matter of law, litigated in the first action the matters that he raised in the second action.  See id. at 1362-63 (the plaintiff did not discover evidence of the conspiracy until after the state courts had denied his appeal of the Civil Service Commission).  That is not the situation in the present case because the issue in both the first action and the second action was identical-- constructive discharge.

In addition, we agree with the district court that whether a party had a "full legal opportunity for an investigation and determination" does not test the fairness of the first action.  See slip op. at 3-4.  Rather, it tests whether defensive collateral estoppel applies "where the plaintiff in the second action was not a party in the first action but was so aligned with the party in the first action (such as an employer of an employee in the first action) that [the plaintiff in the second action] had every incentive and opportunity to litigate the first [action]."  Id. at 4; see also Updegraff, 744 F.2d at 1362 (noting that whether "the party sought to be precluded by the earlier litigation must have had a 'full legal opportunity for an investigation and determination of the matter'" is relevant to whether the actions involve the same parties or their privies in res judicata analysis); State ex rel. Howson v. Consolidated School District, 245 Iowa 1244, 1248, 65 N.W.2d 168, 171 (1954); cf. Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) (Parklane) (testing whether it is fair to apply offensive collateral estoppel to a defendant who may have had little incentive to vigorously defend the first action).  Thus, this test does not apply here because the parties were the same; appellant was the plaintiff both in the first action and the second action and he had every incentive to vigorously litigate the first action before the CSC.

Appellant also argues that the CSC procedures were inadequate because he was not entitled to discovery.  In Parklane, 439 U.S. at 330-31, the Court explored situations in which the application of offensive issue preclusion would be unfair.  For example, where the defendant in the first action was sued for small or nominal damages, the defendant may have little incentive to defend vigorously, particularly if

future suits were not foreseeable. See id. at 330. Secondly, "[a]llowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." Id. (footnote omitted). "Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." Id. at 330-31 (footnote omitted); see, e.g., Hunter v. City of Des Moines, 300 N.W.2d at 125.

Unlike both Parklane and Hunter which dealt with offensive collateral estoppel, here, appellees are asserting defensive collateral estoppel. Even if we were to assume the exception applied in this case, it provides appellant no relief. We agree with the district court that, ordinarily, the issue of constructive discharge can be determined without any need for extensive discovery. The test for constructive discharge focuses on those incidents in the workplace that the plaintiff perceived as making his or her employment intolerable, incidents which can readily be identified by the plaintiff's testimony.[5] Therefore, if a plaintiff has to discover such incidents through litigation,

_____

[5]The Supreme Court of Iowa discussed the issue of constructive discharge in First Judicial Dist. Dep't of Correctional Servs. v. Iowa Civil Rights Comm'n, 315 N.W.2d 83 (Iowa 1982). In that case, the court looked to federal employment discrimination decisions. See id. at 87, citing Thompson v. McDonnell Douglas Corp., 552 F.2d 220, 223 (8th Cir. 1977). The court found that a constructive discharge "exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Id. "To find constructive discharge, the factfinder must conclude that 'working conditions would have been so difficult or unpleasant' that a reasonable person in the employee's position would be compelled to resign." Id. This is the same standard used under federal law. See, e.g., Johnson v. Runyon, 137 F.3d 1081, 1083 (8th Cir.) (per curiam), cert. denied, 119 S. Ct. 264 (1998); E.W. Blanch Co. v. Enan, 124 F.3d 965, 970 (8th Cir. 1997).

it is unlikely that they could have been the kind of incidents for which the plaintiff could have claimed constructive discharge. Here, appellant has made no showing that the absence of discovery had any impact on the resolution of the constructive discharge issue by the CSC.

In sum, the sole question is whether relitigation of the constructive discharge issue is barred by issue preclusion or collateral estoppel. We hold that collateral estoppel does apply because the issue of constructive discharge was specifically and directly raised, litigated, and decided before the CSC, appealed to the state district court, and thereafter appealed and resolved on the merits by the Iowa Supreme Court. Even a cursory reading of the decision of the Iowa Supreme Court shows that the constructive discharge issue was material and relevant in each of the state court proceedings. We note, as did the Iowa Supreme Court, that the constructive discharge issue was jurisdictional to the CSC because the CSC has jurisdiction only over removals, suspensions, and demotions. See 560 N.W.2d at 574. We have no doubt that the determination of the constructive discharge issue in the state courts was not only necessary and essential to the resulting judgments, but also the sole issue necessary to resolve the case.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-