# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  00-2490

_____

| | | |
|---|---|---|
| Minneapolis Community Development Agency, | * | |
| | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Dennis Buchanan; Robert Bonynge; Gerald L.  Buchanan; Broadway Visuals, Inc., | * | |
| | * | |
| | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted:  February 14, 2001
Filed:  October 3, 2001

_____

Before RICHARD S. ARNOLD, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

The Minneapolis Community Development Agency (MCDA) appeals the district court's[1] decision to dismiss its complaint on grounds of collateral estoppel. We affirm.

## I.

The individual defendants in this case were all involved in related business enterprises engaged in selling sexually explicit adult entertainment material. Dennis Buchanan and Robert Bonynge each own 50% of the common stock of the defendant corporation, Broadway Visuals, Inc. (Broadway Visuals) and are the directors of the company. Gerald Buchanan, Dennis's brother, has been a business consultant to Broadway Visuals since 1991. Since 1986, Broadway Visuals has operated an adult bookstore at 927 Hennepin Avenue in Minneapolis, Minnesota. Dennis Buchanan and Robert Bonynge also each owned 40% of the common stock of a now-defunct corporation named Golden Spike, Inc. (Golden Spike). Alan E. Segal owned the other 20% of Golden Spike's common stock.

In January 1988, Dennis Buchanan negotiated a lease of space for Golden Spike located at 10 South Ninth Street in Minneapolis. This location was only two blocks from the adult bookstore operated by Broadway Visuals on Hennepin Avenue. From April through July 1988, Golden Spike used the second floor of the South Ninth Street location for an adult dance business, leaving the first floor vacant. The Fire Marshal ordered the dance business to close in July 1988. Golden Spike's check register indicates very little activity from July through December 1988, and it reported a tax loss of over $24,000 for 1988.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Meanwhile, the first floor of 10 South Ninth Street opened as a gay-only adult bookstore in August 1988. Broadway Visuals had advertised in newspapers that it would be opening a new bookstore at 10 South Ninth Street catering to the gay community, and initial stock for the store came largely from Broadway Visuals' Hennepin Avenue store. In January 1989, Golden Spike's check register showed renewed activity as the defendants used the Golden Spike account to pay business expenses for the store on South Ninth Street. Golden Spike, which had closed the adult dance business in 1988, claimed the income from the 10 South Ninth Street bookstore on its tax return for 1989. Golden Spike offset that income with its 1988 tax loss from the dance business, resulting in no tax on the 1989 bookstore income.

In December 1988, the MCDA filed a condemnation petition to acquire the block in Minneapolis that includes the property at 10 South Ninth Street, the location that Golden Spike had leased. Title and possession of the property transferred to the MCDA on March 16, 1989. The MCDA paid $26,331 for the relocation of the book store merchandise. In March 1989, Dennis Buchanan asserted a claim in the name of Broadway Visuals for damages for the loss of a going concern. This claim was denied. On March 7, 1991, the individual defendants made a damages claim in the name of Golden Spike for the loss of a going concern, asserting that Golden Spike had owned the bookstore at 10 South Ninth Street and that the condemnation had put the store out of business causing a loss of over three million dollars. The MCDA defended against the claim for damages, asserting that Broadway Visuals owned the bookstore, not Golden Spike, and that the claim for loss of a going concern by Golden Spike was therefore fraudulent. The MCDA claimed that the individual defendants and Broadway Visuals also committed fraud by allegedly attempting to use Golden Spike's 1988 tax loss to offset the substantial income that Broadway Visuals actually earned from the bookstore at 10 South Ninth Street during 1989. The MCDA alleged that this scheme was devised so that the resulting tax savings could be used to compensate Alan Segal for his investment in the failed Golden Spike enterprise.

3

Golden Spike's check register indicates a payment to Segal in the amount of $16,010.50 during 1989.

The condemnation commissioners awarded Golden Spike for the loss of a going concern. Both parties appealed the commissioners' decision. The state district court determined that Golden Spike had not suffered a loss of a going concern, but the Minnesota Court of Appeals remanded the matter for a jury trial. In the jury trial, the MCDA asserted an affirmative defense of fraud against Golden Spike. The jury found by way of a special verdict that Golden Spike did not own the bookstore at 10 South Ninth Street, but the jury also specifically found that Golden Spike had not submitted a fraudulent claim for the loss of a going concern.

In this federal suit, the MCDA asserts that the defendants committed common law fraud and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), (d) (1994), premised upon mail fraud in filing fraudulent tax returns and a false claim for the loss of a going concern on behalf of Golden Spike. Concluding that this action is collaterally estopped by reason of the state court condemnation judgment, the district court granted the defendants' motion to dismiss, treating it as a motion for summary judgment because of the development of the record in the case. The MCDA now appeals.

II.

The MCDA argues that the district court erred by granting the defendants summary judgment on grounds of collateral estoppel. We respectfully disagree.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We look to the substantive law to determine whether an element is essential to a case, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Pursuant to federal law, judicial proceedings in one state will have the same full faith and credit in every court within the United States as they have by law in the courts of such state from which they are taken. . . . Federal courts are obligated to give preclusive effect to issues decided by state courts . . . ." Haberer v. Woodbury County, 188 F.3d 957, 961 (8th Cir. 1999) (citing 28 U.S.C. § 1738). Under Minnesota law, collateral estoppel, or issue preclusion, precludes the relitigation of issues that are identical to issues previously litigated and that were necessary and essential to the prior judgment. Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 650 (Minn. 1990). Minnesota does not require mutuality of parties as a predicate to the invocation of collateral estoppel. Id. "Collateral estoppel is available where: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues." Lyon Fin. Servs., Inc. v. Waddill, 625 N.W.2d 155, 158-59 (Minn. Ct. App. 2001).

We find no error in the district court's application of the collateral estoppel doctrine. On the first element of estoppel, the district court correctly concluded that

5

the issues of this case are identical to an issue adjudicated in the condemnation hearing. The claims asserted in this suit–common law fraud and RICO violations premised on mail fraud–are predicated on the same factual circumstances that the MCDA offered as an affirmative defense in the condemnation trial.

The MCDA asserts that the state condemnation proceeding is a special proceeding in rem which could not have determined anything but the amount of damages due. The MCDA states, "For anything further to be decided by the condemnation action it would have to be by stipulation or agreement of the parties." (Appellant's Br. at 16.) We acknowledge that a condemnation proceeding ordinarily does not decide issues of fraud, but here the fraud issue was tried to the jury by consent and by necessity because the MCDA had proffered fraud as an affirmative defense. Following closing arguments in the condemnation trial, the trial court and counsel met outside the hearing of the jury. At the request of counsel for Golden Spike, the court decided to issue a curative instruction, informing the jury that even if they answered "no" on question number one (i.e., that Golden Spike was not the owner of the bookstore), then they must still answer question number five (i.e., deciding whether Golden Spike had submitted a fraudulent claim for the loss of a going concern). (Appellees' Supp. App. at 83.) Counsel for Golden Spike and for the MCDA assented to this instruction. (Id. at 83-84.)

In both the condemnation hearing and the current action, the MCDA alleged that the individual defendants, acting on behalf of Golden Spike, fraudulently pursued a claim for the loss of a going concern because Golden Spike did not own the bookstore on South Ninth Street. In the condemnation trial, the parties agreed to the submission of a special verdict on the issue of whether Golden Spike had fraudulently claimed the loss of a going concern. The same evidence that was admitted in the state condemnation trial is set forth by the MCDA in this federal case in an effort to prove that these defendants acted fraudulently. See State Farm Mut. Auto. Ins. Co. v. Spartz, 588 N.W.2d 173, 175 (Minn. Ct. App. 1999) (noting the classic doctrine of

6

collateral estoppel states that a "question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit by the same parties or their privies" (internal quotations omitted)).  Thus, the identical issue element is satisfied.

The second element of estoppel is satisfied because there was a final judgment on the merits of the fraud issue in the condemnation trial.  The MCDA argues that the fraud issue was not adjudicated because the final judgment states only that Golden Spike was not the owner of the bookstore and that no damages were owed to Golden Spike.  Ordinarily, "a verdict does not operate as an estoppel until it becomes a judgment." Ellis v. Minneapolis Comm'n on Civil Rights, 319 N.W.2d 702, 704 (Minn. 1982).  Here, however, all of the special verdict questions and the jury's answers to each were recited in the final judgment.  Question number one asked the jury whether Golden Spike owned the bookstore at 10 South Ninth Street.  The jury answered "no." (Appellees' Supp. App. at 3.)  Question number five asked the jury whether Golden Spike had submitted a fraudulent claim for the loss of a going concern.  Again, the jury answered "no." (Id. at 4.)  The final judgment quoted each question and answer.  The final judgment also explains that counsel for Golden Spike objected to the language of special verdict question number five, which originally asked whether the owners of Golden Spike had engaged in fraudulent conduct.  Because the owners of the corporation's stock were not parties to the condemnation proceedings, the court revised the question to ask only if Golden Spike had submitted a fraudulent claim.  The state court judgment notes, "The MCDA agreed that the liability of the individuals should not be litigated and the court then submitted to the jury a revised Question No.  5 which deleted the owners." (Id. at 3.)  The state court judgment  declared that it "adopts the finding of the jury that Golden Spike was not the owner of the bookstore in question and finds that Golden Spike, Inc. has not established the requirements for a claim of loss of going concern." (Id. at 4.)  The judgment recites all of the jury's findings and does not expressly reject any one of them.

7

The MCDA argues that the district court did not give effect to the state court judgment, which expressly states that the liability of the owners was deleted from the case upon objection by counsel for Golden Spike and, therefore, question number five has no significance to the present suit. We again respectfully disagree. The MCDA raised the fraud issue as an affirmative defense in the condemnation trial. The instructions required the jury to either accept or reject this defense, regardless of whether the owners were named in the question, and the final judgment indicates the jury's finding on the merits of the issue. Because Golden Spike, being a corporation, can act only through its agents who are these defendants, see St. Paul Cos. v. Van Beek, 609 N.W.2d 256, 258 (Minn. Ct. App. 2000), the jury's finding has merit and is significant to the present suit.

The third element of estoppel is undoubtedly met. There is no question that the estopped party, the MCDA, was a party to the condemnation proceeding. Because Minnesota law does not require mutuality of parties to apply estoppel, see Aufderhar, 452 N.W.2d at 650, there was no need to demonstrate that the defendants were in privity with Golden Spike (though this privity also could be established).

The final element of estoppel is satisfied because the MCDA was given a full and fair opportunity to be heard on the issue of fraud. Whether the individual defendants, acting on behalf of Golden Spike, had submitted a fraudulent claim for loss of a going concern was the substance of the MCDA's affirmative defense. Even though these defendants were not parties to the condemnation suit, there was incentive for each side to fully litigate this issue. The MCDA argues that while the fraud issue was completely examined in the closing statements, the arguments of counsel do not necessarily constitute issues resolved in the case. In this case, however, it was necessary for the parties to thoroughly explore and argue both sides of the fraud issue because it was forcefully submitted as an affirmative defense by the MCDA. The jury was required to make a finding on the issue, and it did. We

8

conclude that the issue was fully explored, argued, and determined in the state condemnation trial.

Collateral estoppel applies with equal force to the MCDA's RICO claims in this suit. See Berns v. O'Dell, 726 F.2d 409, 409-10 (8th Cir. 1984) (holding collateral estoppel barred litigation under RICO where the predicate fraud issue had been decided as a counterclaim in an earlier action). The RICO claims here rely on the same factual issues as the common law fraud claim and the allegations of fraud that were fully litigated in the state court condemnation proceedings. Where a common law fraud claim has been properly dismissed or previously adversely litigated, a party to the prior litigation may not rely on the same conduct to form the essential element of fraud that may constitute a predicate act of a RICO violation. Brannan v. Eisenstein, 804 F.2d 1041, 1046 (8th Cir. 1986). The RICO claims in this case involve the same transactions and the same allegations of fraud that served as the MCDA's affirmative defense in the state condemnation trial. Although the RICO claims would require proof of additional elements, the fraud issue already litigated is a necessary predicate to any recovery on the RICO claims. Because the fraud issue has been decided adversely to the MCDA, the MCDA is unable to prove every element necessary to demonstrate a RICO violation.

Broadway Visuals is completely owned and operated by Dennis Buchanan and Robert Boynge, who are individual defendants in this case. The MCDA's complaint asserts that the individual defendants controlled both Broadway Visuals and Golden Spike and that the individuals "acted jointly to carry out the fraudulent schemes described in this complaint using the corporations Broadway Visuals, Inc. and Golden Spike, Inc. for that purpose." (Appellant's App. at 6.) Because Broadway Visuals is a corporation, it can act only through its agents, who are individual defendants in this case. See St. Paul Cos., 609 N.W.2d at 258. Thus, collateral estoppel applies equally to the MCDA's claims against Broadway Visuals.

9

# III.

Accordingly, we affirm the judgment of the district court.

LAY, Circuit Judge, dissenting.

I respectfully dissent. I respectfully submit that the majority opinion fails to fully address the jurisdictional issues necessary to a correct decision in this case.

It is this court's responsibility to consider questions of subject matter jurisdiction, in the first instance. In Minnesota, condemnation proceedings are unique, in that they are considered as *in rem* proceedings, rather than being full-fledged civil actions. See Antl v. State, 19 N.W.2d 77, 79 (Minn. 1945); State v. Werder, 273 N.W. 714, 715-16 (Minn. 1937). A Minnesota state court, presiding over a condemnation proceeding, is a court of limited jurisdiction. See City of Mankato v. Hilgers, 313 N.W.2d 610, 612 (Minn. 1981) ("[W]hen the district court is reviewing a commissioners' award in the form of a trial de novo before a jury, its jurisdiction is appellate and the only issue is the amount of damages necessary to make just compensation."). Specifically, a jury empaneled to review the decision of appointed commissioners has very limited jurisdictional authority. All that jury is authorized to do is review the commissioners' compensation decision, which, in turn, is the commissioners' only responsibility. See State v. Prow's Motel, Inc., 171 N.W.2d 83, 85 (Minn. 1969) ("[T]he sole function of lay commissioners appointed by the court . . . is 'to ascertain and report the amount of damages that will be sustained . . . on account of such taking . . . .'") (citations omitted). Thus, I respectfully submit the state court in this case lacked subject matter jurisdiction to decide the fraud question.

The majority tentatively agrees with this conclusion. See Maj. Op. at 6 ("We acknowledge that a condemnation proceeding ordinarily does not decide issues of

fraud . . . ."). However, it states that this case proves to be an exception to the rule because the parties consented to the condemnation jury deciding the fraud issue. Id. The MCDA urges there was not consent; I would agree. However, the presence or absence of consent is irrelevant, as consent cannot confer subject matter jurisdiction where it is lacking. See Smith v. Ashland, Inc., 250 F.3d 1167, 1172 (8th Cir. 2001); In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996); Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 671 (8th Cir. 1986). The Minnesota state courts also abide by this rule. See Minn. R. Civ. P. 12.08(c) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); Herubin v. Finn, 603 N.W.2d 133, 137 (Minn. Ct. App. 1999) ("Subject matter jurisdiction cannot be conferred upon the court by consent of the parties.") (citing Hemmesch v. Molitor, 328 N.W.2d 445, 447 (Minn. 1983)).

Because the jury lacked jurisdictional authority to decide fraud as an ultimate issue, its decision on that issue cannot be given collateral estoppel effect. See Montana v. United States, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined *by a court of competent jurisdiction*, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (emphasis added) (cited in City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc., 767 F.2d 429, 430-31 (8th Cir. 1985)). See also 46 Am. Jur. 2d Judgments § 571 (1994) ("[I]n order that a judgment may operate as a conclusive determination of a cause of action, or of issues litigated in a previous action, it is necessary that it should have been rendered by a court of competent jurisdiction . . . ."). A valid judgment is an absolute prerequisite to application of the collateral estoppel doctrine. See In re Miera, 926 F.2d 741, 743 (8th Cir. 1991) ("It is well settled under the collateral estoppel doctrine that four elements must exist to bar relitigation . . . (3) *the issue must have been determined by a valid and final judgment . . . .*") (emphasis added); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated

11

and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

In response to the foregoing analysis, defendants respond that, even if the jury did not have authority to decide the fraud question *as such*, deciding that issue was necessary to determining the propriety of the condemnation award. The majority agrees, holding that the MCDA proffered fraud as an affirmative defense, and, therefore, the state condemnation court properly put the question of fraud to the jury. See Maj. Op. at 6, 8. Thus, they hold, the jury properly determined the fraud issue regardless of its limited authority. I respectfully disagree; it should be clear that characterization of the fraud issue as an "affirmative defense" is erroneous.

For a prior judgment to have preclusive effect and prevent relitigation of issues decided therein, that issue must have been actually litigated in the prior proceeding and necessary to that judgment. See Boudreau v. Wal-Mart Stores, Inc., 249 F.3d 715, 719 (8th Cir. 2001) (citing Arkansas law); In re Miera, 926 F.2d at 773 ("It is well settled under the collateral estoppel doctrine that four elements must exist to bar relitigation . . . (2) the issue must have been litigated in the prior action [and] (4) the determination must have been essential to the prior judgment."); Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir. 1990); Haavisto v. Perpich, 520 N.W.2d 727, 731 (Minn. 1994) ("The doctrine of collateral estoppel mandates that 'once an issue is *actually and necessarily* determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits, based on a different cause of action, involving a party to the prior litigation.'") (emphasis added) (cited in Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 939 (8th Cir. 2000)).

I would agree that the issue of fraud was actually litigated in the condemnation proceeding, for the reasons set forth in the majority opinion. However, I submit the crux of the issue is whether such a determination was necessary for the resolution of

the condemnation dispute. If not, the jury's determination is due no deference. See Restatement (Second) of Judgments § 27(h) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues . . . is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.").

It is clear that the determination of the question of fraud was not essential to the jury's decision. The jury's opinion as to whether Golden Spike or the individual defendants had submitted a *fraudulent* claim, as opposed to merely a losing claim, could not have made a legitimate difference in its determination of the damages issue, which was the only "ultimate issue" the jury actually had before it. The trial judge presiding over the condemnation proceedings agreed. Although he recited the jury's findings in their entirety, he properly rendered his judgment solely on the basis of the finding that Golden Spike had failed to establish ownership.[2]

In fact, the irrelevance of the fraud question posed to the jury would have been true regardless of how the jury came out on the question of ownership. As the condemnation judgment actually unfolded, the jury found that Golden Spike did not own the bookstore at 10 South Ninth Street. That was the only finding necessary for the jury to deny compensation. Subsequent to that finding, precisely what the defendants did or what their mental state was in submitting the claim had absolutely no bearing on the outcome of the case.

---

[2]Indeed, the judge would have erred had he based his final judgment on any other grounds. The majority, by attributing legal authority to his recitation of the jury's findings in their entirety, impliedly attributes such an error to him. I cannot agree with this conclusion.

Nor could the question of fraud had any bearing if the jury had come out the other way on the question of ownership. An affirmative decision on ownership would have likewise ended the inquiry. If the jury found that Golden Spike owned the building, the MCDA would have lost even if Golden Spike's owners had possessed fraudulent intent. Under the law of eminent domain, Golden Spike, as owner of condemned property, would have been due compensation regardless of how "bad" its owners were.[3]

Under any conceivable scenario, including the jury's actual findings, the question of fraud was absolutely superfluous to the judgment the jury was required to render. The MCDA is quite right to say, in retrospect, that the question should have been deleted entirely. This is not to say that it is this court's responsibility to save the MCDA from the consequences of its own error at trial. Rather, it is to recognize that all courts have a duty to enforce their own jurisdictional limits regardless of the consequential effect on parties.

In this case, the state condemnation court had no authority to decide the fraud question. It also had no authority to decide the question ancillary to its decision on damages; determining fraud, as opposed to merely lack of ownership, was not necessary to decide the damages issue. Therefore, preclusive effect cannot be given to the decision of the state condemnation court. Notwithstanding the majority's reasoned analysis of the four collateral estoppel factors, its analysis should not have

---

[3]Characterizing the fraud question as an affirmative defense, as the majority does, is erroneous. Characterizing something as an affirmative defense implies that a defending party will successfully defend against a claim if the defense is accepted. As noted above, establishment of the independent elements of fraud, notably scienter in this case, could have had no legitimate impact on the outcome. Perhaps the jury and the trial court could have nullified the state law of eminent domain by refusing compensation because the owners were "bad," but this would have been an unjustifiable error rather than grounds on which to declare fraud an affirmative defense.

proceeded beyond the jurisdictional question. Regardless of the respect generally due state court judgments by federal courts, <u>see</u> <u>Haberer v. Woodbury County</u>, 188 F.3d 957, 961 (8th Cir. 1999), the state condemnation court did not have subject matter jurisdiction to decide the fraud question. Thus, the state court's "resolution" of that question was not binding on any subsequent court. The district court's order should be reversed and the case remanded for consideration of the fraud issue by a competent court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15